**Daniel Edward McILVAINE**

v.

**C. Murray HENDERSON, Warden of Louisiana State Penitentiary.**

**Misc. No. 1012.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Jan. 27, 1969.

Richard A. Dowling, New Orleans, La., for petitioner.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Kenneth C. DeJean, Sp. Counsel to Atty. Gen., Baton Rouge, La., for respondent.

WEST, Chief Judge:

Petitioner, Daniel Edward McIlvaine, presently incarcerated in Louisiana State Penitentiary, seeks a writ of habeas corpus. He is serving a fifteen year sentence imposed upon him on November 27, 1962, for violation of Louisiana Revised Statutes 40:962, i. e., having on the 19th of March, 1962, possession of twenty tablets of Morphine and two tablets of Dilaudid. In July of 1966 petitioner filed an application with this Court for a writ of habeas corpus, but when the matter came on for hearing it was voluntarily dismissed by petitioner's counsel because of the fact that petitioner was, at that time, serving another five year sentence from which he did not seek relief, and petitioner elected to await the termination of that sentence before proceeding with the present matter. This petition was filed on November 5, 1968, and on December 19, 1968, after a full evidentiary hearing, the matter was submitted on the record.

This case involves the narrow issue of whether or not certain evidence used against petitioner at his trial was the fruit of an illegal search and seizure. This Court concludes that it was.

The State argues that first, the search and seizure, which produced the narcotics used as evidence against petitioner, was made pursuant to a valid search warrant, and secondly, if the search warrant was not valid, the search and seizure was made incident to a lawful arrest. Both of these contentions must be rejected.

■■ As to the validity of the search warrant, the case of Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), is controlling. In *Aguilar,* the officers requesting the search warrant submitted an affidavit in support of their application to the issuing Justice of the Peace, which stated:

"Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."

On the strength of this affidavit, the search warrant issued. In holding that the search warrant should not have been issued on the strength of such an affidavit, and that the evidence obtained pursuant to such a search warrant was inadmissible at the defendant's trial, the United States Supreme Court said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' Giordenello v. United States, supra, 357 U.S. [480] at 486, 78 S.Ct. [1245] at 1250 [2 L.Ed.2d 1503]; Johnson v. United States, supra, 333 U.S. [10] at 14, 68 S.Ct. [367] at 369, [92 L.Ed. 436] or, as in this case, by an unidentified informant.

"We conclude, therefore, that the search warrant should not have been issued because the affidavit did not provide a sufficient basis for a find-

ing of probable cause and that the evidence obtained as a result of the search warrant was inadmissible in petitioner's trial."

■ The affidavit used to support the issuance of the search warrant in the present case was not unlike that used in the *Aguilar* case. It stated:

"The above officers received information from a confidential and reliable source that there is narcotics and burglary tools concealed in the premises of 3117 No. Derbigny Street."

The search warrant issued by the Judge of the Criminal District Court for the Parish of Orleans, State of Louisiana, pursuant to said affidavit, said:

"AFFIDAVIT(S) HAVING BEEN MADE BEFORE ME by LT. C. GIARRUSSO, OFFICERS J. FAVALORO & T. DUFFY, of the New Orleans Department of Police, that he has good reason to believe that on or in premises 3117 No. Derbigny Street located within the Parish of Orleans, State of Louisiana, there is now being concealed certain property, namely, ópium derivatives and Burglary Tools which said property constitutes evidence of the violation of R.S. 40:962 (14–95) of the Louisiana Revised Statutes, and as I am satisfied from the affidavit(s) submitted in support of the application for this warrant that there is probable cause to believe that the aforesaid property is being concealed on or in the premises above described, and that the aforesaid grounds for the issuance of this search warrant exists:

"YOU ARE HEREBY ORDERED to search * * *."

It is thus clear that the search warrant issued solely and entirely upon the strength of the above quoted affidavit submitted by the police officers, and it is equally clear that, under the rule of *Aguilar,* the affidavit in question, standing alone as it did in this case, was not a sufficient showing of probable cause to issue the search warrant. Thus, the

search warrant in this case must be held to have been improperly issued.

■ Since *Aguilar* was not decided by the Supreme Court until June of 1964, the State contends that it can have no retroactive application to this 1962 conviction. There is no merit to this contention. After the Louisiana Supreme Court affirmed petitioner's conviction and sentence in January of 1964, and denied his application for rehearing in February of 1964, petitioner applied to the United States Supreme Court for a writ of certiorari, which was granted. While the case was pending before the United States Supreme Court on writs, *Aguilar* was decided, and indeed, the United States Supreme Court remanded the case to the Louisiana Supreme Court for further consideration "in light of *Aguilar.*" Thus it is not necessary for petitioner to rely on the *Aguilar* decision retroactively since his conviction was not final when the decision in *Aguilar* was rendered. See Doby v. Beto, 371 F.2d 111 (CA 5–1967). *Aguilar* is controlling as to the question of the validity of the search warrant in this case.

When the case was remanded by the United States Supreme Court to the Louisiana Supreme Court for further consideration in light of *Aguilar,* the Louisiana Supreme Court, instead of applying the rule of *Aguilar,* decided that the arrest of petitioner was a legal arrest and that the search and seizure in question was incident to that arrest, and that thus the evidence so obtained was properly admitted in evidence. This Court cannot agree with that conclusion.

■ Surely if the officers did not possess sufficient personal knowledge of the existing circumstances to support the issuance of a search warrant, they did not possess sufficient personal knowledge to give them probable cause to make an arrest. In *Aguilar,* the United States Supreme Court said:

"An evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and de-

liberate determinations of magistrates empowered to issue warrants * * * are to be preferred over the hurried action of officers * * * who may happen to make arrests.' * * * The reasons for this rule go to the foundations of the Fourth Amendment. A contrary rule 'that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.' * * * Under such a rule 'resort to [warrants] would ultimately be discouraged.' * * * Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' * * *."

■ Thus, since there was no probable cause for the issuance of a search warrant in this case, there was not sufficient showing of probable cause for an arrest without a warrant. This conclusion is dramatically supported by the following testimony of Officer Favalora:

"Q. When you applied for this search warrant, or these search warrants, did you have a warrant of arrest for McIlvaine?

"A. No, Sir.

"Q. You didn't apply for one?

"A. No, Sir.

"Q. Why?

"A. There was no need for it at that time.

"Q. Why wasn't there need for it?

"A. Because we didn't have the evidence."

And again:

"Q. As I understand, you testified before, Mr. Favalora, you said you had no evidence, is that right, at the time of the arrest?

"A. At the time I arrested him I didn't have no evidence.

"Q. You had no evidence? No evidence at all?

"THE COURT: So the case depended entirely on the validity of the search that followed the arrest?

"THE WITNESS: That's right."

It is thus abundantly clear that the search and seizure which produced the evidence used against petitioner at his trial was neither made pursuant to a lawful search warrant, nor as an incident to a lawful arrest. That evidence should have been suppressed at petitioner's trial, and failure to do so renders his conviction invalid. For these reasons, petitioner's application for a writ of habeas corpus will be granted, reserving to the State, of course, the right to re-try petitioner, if it elects to do so, according to law, and within a reasonable time, say sixty (60) days from date hereof.