464 So.2d 262 (1985)
STATE of Louisiana
v.
Ernest BUSBY.
No. 84-KA-1089.
Supreme Court of Louisiana.
January 14, 1985.
Rehearing Denied March 7, 1985.
*263 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William E. Tilley, Dist. Atty., Edwin L. Cabra, Asst. Dist. Atty., for plaintiff-appellee.
James R. Mitchell, Leesville, for defendant-appellant.
DIXON, Chief Justice.
Ernest W. Busby III was convicted on February 15, 1984 of the first degree murder of John Reeves. According to the defendant's confession, Busby was angered when he discovered that Reeves had told Busby's girl friend, Ruthie Jones, that Busby had referred to her as a "whore." Busby confronted Reeves with this story, but Reeves refused to acknowledge that he had made the statement. The day after the incident Busby invited Reeves to go squirrel hunting, intending either to "stomp him with [his] hands ... or use that gun on him." While hunting Busby shot Reeves in the back from twelve feet away with a 20 gauge shotgun. Reeves "lay there gasping... looked up at [Busby] ... asked [him] if [he] shot him ... and rolled over and died."
Busby checked Reeves' pulse, said a short prayer, and then covered the body with leaves and twigs after removing the victim's watch and a wallet containing approximately $150. Busby returned to 3B's Trailer Park where both he and the victim lived and ran a few errands, including picking the victim's daughter up from school. That evening he took his friends Danny and Gisela Humphrey out for drinks to celebrate her birthday.
On the following day Busby decided that prudence dictated that he leave Leesville. He traveled to Shreveport, using the victim's car, but was arrested by Caddo Parish authorities on December 5, 1983, four days after the shooting. The defendant was then transported back to Vernon Parish *264 where he was indicted by a grand jury for first degree murder.

Assignments of Error Nos. 1 and 3[1]
Assignment of Error No. 1 complains that the trial court erred in allowing the state's answers to discovery motions to be filed on the day of trial. Assignment of Error No. 3 claims that the admission into evidence of twelve items not included in the state's answer was erroneous.
Although trial was scheduled for February 13, the defendant's pretrial motions, including discovery requests and a request for bill of particulars, were not filed until February 10.[2] On the Friday that the motions were filed, Assistant District Attorney Edwin Cabra spoke with defense counsel and informed him of certain items of evidence which the state intended to introduce at trial. Three days later, on the morning of trial, the state filed a written notice of intent which included additional items not previously communicated to defense counsel.
Immediately prior to the commencement of trial, the defense objected to the late filing of answers to discovery and moved that the state be bound by the oral answers given the previous Friday. The trial court overruled the objection on the grounds that the state's notice of intent, filed within three days of defendant's requests for discovery, provided adequate notice to the defendant of the evidence that the state intended to use against him.
The disputed items include photographs of the victim's car (stolen by defendant), a map drawn by defendant which purported to show the location of the victim's wallet, several inculpatory oral statements made by Busby both to police and to various witnesses, and various Miranda warning cards and waiver of rights forms.
Code of Criminal Procedure article 729.5 lists the sanctions available to the trial judge should either party fail to comply with requests for discovery:
"A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate."
At the time of defense counsel's objection, the trial court specifically asked whether the defense desired to file a motion for a continuance, seemingly indicating that such a motion would be seriously entertained. The defense, however, responded that it did not wish the trial continued but only that the state be prevented from introducing any items not revealed the Friday before trial.
Article 729.5 gives the trial judge wide latitude in choosing the appropriate sanction. Given the fact that the discovery exchanges occurred so close to the commencement of trial, the trial judge's suggestion of a continuance, instead of exclusion of the particular items, was preferable and appropriate.
In addition, the defendant has failed to allege that any prejudice resulted from the state's omission. The state's failure to comply with discovery requests does not constitute reversible error unless actual prejudice results to defendant. State v. Vaccaro, 411 So.2d 415 (La.1982). In this case, no prejudice resulted, since the excluded items were merely cumulative, and since the evidence against the defendant was overwhelming. There was nothing learned from the disputed items that was *265 not contained in the defendant's written confession or in his statements from the witness stand.
These assignments are without merit.

Assignments of Error Nos. 4 and 6
In these assignments defendant complains of the trial court's denial of a special jury charge detailing the respective sentences on the responsive verdicts returnable by the jury. The trial judge, although disallowing the charge, did permit defense counsel to argue the charge to the jury. The trial court based its ruling on Comment (c) of C.Cr.P. 807:
"...
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
. . . . .
"(c) C.C.P. Art. 1793 and Fed.Rule 30 further provide that: `The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury....' The purpose of the provision is to allow the parties to argue to the jury any point of law that the judge may refuse to charge. The provision is unnecessary, because each party in his argument to the jury will argue all points of law favorable to his side irrespective of the judge's decision to charge or not to charge according to the requests." Official Revision Comment (c).
The trial judge was incorrect in denying the special charge since under the language of article 807, the charge did not require "qualification, limitation, or explanation" and was "wholly correct and pertinent." However, the jury was in fact made aware of the sentences of the responsive verdicts in defense counsel's closing arguments. Although it would have been preferable that the trial judge include the responsive sentences in his formal charge to the jury, his failure to do so does not constitute reversible error. As long as the jury was made aware of the substance of the charge in closing arguments, no prejudice to the defendant could have resulted.
These assignments are without merit.

Assignment of Error No. 5
This assignment of error concerns the trial judge's ruling during the sentencing phase which allowed the prosecution to introduce evidence during the opening statement. The evidence introduced was documentation of the defendant's prior criminal record. Defendant urges that since under C.Cr.P. 905.2 the procedure governing the sentencing phase "shall be the same as that provided for trial in the Code of Criminal Procedure," the admission of evidence during the opening statement was improper.
Defendant's contention is correct. Article 766 provides that the opening statement shall "set forth ... the nature of the evidence by which the state expects to prove the charge." There are no provisions for the actual admission of evidence during the opening statement. However, defendant does not contend that the evidence, had it been introduced at the proper time, was inadmissible. The evidence of a prior criminal record is admissible evidence in the sentencing phase; it is relevant to the "character and propensities of the offender." C.Cr.P. 905.2; State v. Jordan, 440 So.2d 716 (La.1983). Although the opening statement is not the appropriate time for the introduction of evidence, the error is harmless.
This assignment is without merit.

Capital Sentence Review
Code of Criminal Procedure article 905.9 and Louisiana Supreme Court Rule 28 require the review of every death sentence for excessiveness. Particularly this court considers the following three factors:
"...
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and

*266 (b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Louisiana Supreme Court Rule 28 (C.Cr.P. 905.9.1).
The sanity commission report reveals that defendant, a white male, was twenty-four years old at the time of the crime. He is unmarried and has no children. Although defendant did not graduate from high school, he does have a G.E.D. He also attended college for approximately two years. He has a spotty work history and spent five months in the United States Navy before being discharged on the basis of his disruptive behavior. The sanity commission doctors found no evidence that defendant was suffering from a mental disease or defect or diminished capacity, although he had been committed to the Mandeville State Hospital at the age of twelve for approximately one year. That (involuntary) commitment had followed an attack by defendant on his mother with a butcher knife. The incident "appeared to be premeditated because [defendant] says he notified an ambulance before he attacked her." That incident also led to defendant's confinement at Louisiana Training Institute and anticipated his stormy and disordered life over the next ten years. The sanity commission concluded that the defendant was "a very rebellious type person against all authority."

Passion, Prejudice and Arbitrary Factors
The defendant and the victim were both white; racial prejudice was not an issue.
The judge's jury instructions during the sentencing phase were a correct statement of the law. He informed the jurors that, although they had to find the existence of at least one aggravating circumstance before they could consider recommending the death penalty, they were not bound to recommend the death penalty if they did find the existence of an aggravating circumstance; they could still recommend life imprisonment. Additionally, the judge instructed the jurors that either recommendation must be unanimous and if they could not reach unanimity the law provided that he impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
The prosecutor argued strongly for the death penalty, but reminded the jurors that death sentences were now being carried out in several states. Defense counsel's closing argument stressed that jurors not be lulled into a false sense of security, thinking that if they recommended the death penalty it would not be carried out. He urged the jurors, if they gave the death penalty, to "give it with the appreciation that it'll be carried out."
However, the prosecutor's rebuttal argument touches upon two troublesome subjects. First, he stated that the jury recommends the sentence, but the judge imposes it:
"Though it's difficult to stand before you ladies and gentlemen and ask you to consider imposing upon anyone the penalty of death, but in order to make your task easier, we'll state for you that first of all, you have a solemn obligation to live up to your oath. Second of all, that whatever you decide will be recommendations and recommendations to the Judge, for the Judge to impose the death penalty. It will be the Judge that sentences this defendant to whatever the sentence might be. You make recommendations."
However, considering the prosecutor's comments in light of the judge's jury instructions, it does not seem that the jury was given the impression that the judge would not impose the sentence it recommended. In his opening comments to the jury during the penalty phase of the trial, the judge said: "The jury in a capital case is given the authority to make a binding recommendation to the trial judge as to the sentence that shall be imposed upon the defendant." In his instructions at the conclusion of the penalty phase, the judge told the jurors: "It now becomes your duty to *267 go through the second phase of this proceeding in order to make your recommendation as to the sentence that the Court should impose." Furthermore, as noted above, the judge told the jurors that he would impose a life sentence if they could not make a unanimous recommendation.
One other part of the prosecutor's rebuttal argument also deserves comment. The prosecutor closed with the following appeal to the jurors:
"... I don't want any of you to violate your oath. But you have a duty. You have a duty to God ... to your conscience. And you have a duty to society. If you let Ernest Busby escape the next time it could be you. It could be me. It could be His Honor. It could be anybody.... We have no place for him in our society. Your tax dollars will be spent to care for him for the remainder of his natural life and if that's what you want to happen, I have no qualms with that.... It's your decision ... you won't be faulted. Don't do violence to your conscience. By the same token, think of your obligation to society."
Although carefully hedged by the reminder to the jurors to vote their conscience, the prosecutor's remarks about the societal costs of a life sentence, misspent tax dollars, future escapes, more killings by defendant, were improper. State v. Felde, 422 So.2d 370 (La.1982). Nevertheless, in this case, as in State v. Felde, supra, at 388-89, the prosecutor at least had a factual basis for his remarks; defendant freely admitted at the hearing that he had escaped on numerous occasions and invited the jurors to give him death because "more time ain't going to bother me a bit."
Busby also stated that he had been "locked up off and on for the last twelve years." He also implied that he had killed others, saying: "I am sorry I killed the dude, but I did do it. I can't change that. I'm not going to say whether he was the first or the last one." Cross-examination stressed in great detail defendant's background and the time he had spent in correctional facilities of one type or another.
Given these statements by the defendant, it is obvious that the prosecutor's comments did not inject an arbitrary factor into the proceedings. It was rather the defendant's seeming disregard for human life, both his and others, which prompted the jury to impose a capital sentence.

Aggravating Circumstances
The prosecution argued and the jury found three aggravating circumstances: that the defendant had a significant prior history of criminal activity, that the offense was committed in an especially heinous, atrocious or cruel manner, and that the offense was committed during the perpetration of an armed robbery. In State v. David, 425 So.2d 1241 (La.1984), the term "significant prior history of criminal activity" was declared unconstitutionally vague; therefore, only the last two aggravating circumstances need be discussed.
The victim was shot once in the back from a distance of twelve feet with a 20 gauge shotgun. He collapsed, but lived long enough to ask the defendant if he had shot him. The defendant testified that it took no longer than one and one-half minutes for the victim to die. This assertion was undisputed by the prosecution.
Although no one could consider a shotgun blast in the back less than cruel in the generally accepted meaning of the word, the means by which the defendant put the victim to death in this case do not fall within the category of the cruel, heinous and atrocious crimes contemplated by the statute. The test that we have consistently articulated is whether "there was torture or the pitiless infliction of unnecessary pain on the victim," State v. Sonnier, 402 So.2d 650, 658 (La.1981), clearly not the situation in this case.
More in line with the heinousness and cruelty embraced by the article are such cases as State v. Rault, 445 So.2d 1203 (La.1984); State v. Flowers, 441 So.2d 707 (La.1983); State v. Willie, 436 So.2d 553 (La.1983). In State v. Rault, the victim *268 was raped, strangled, stabbed in the neck and shot twice. In State v. Flowers, a seventy year old widow was severely beaten, raped and strangled in her home. In State v. Willie, the victim was taken blindfolded and naked to a remote area where she was tied spreadeagle and had her throat repeatedly slashed. She was also raped; the crime was committed by more than one perpetrator.
The jury also found that the offense occurred during the commission of an armed robbery. The defendant admitted that he stripped the victim of his wallet which contained approximately $150. There is also evidence that the defendant knew that Reeves would have a large amount of cash on his person and that this was one reason the defendant took Reeves hunting with him. Busby admitted that he was aware that Reeves had recently cashed a large check. On the day prior to the robbery, Busby told his friend Danny Humphrey that he was thinking of taking Reeves into the woods, shooting him and taking his money in order to get money for Humphrey to fix his car. Although the defendant claimed that he was not serious at the time, the jury did not accept that explanation. The evidence, therefore, clearly supports the finding of this aggravated circumstance.
The final question before the court is whether the sentence in this case is disproportionate to the penalty imposed, considering both the crime and the defendant. When compared to the results of other single shot armed robbery cases, the penalty is not disproportionate. See State v. Wingo, 457 So.2d 1159 (La.1984); State v. Glass, 455 So.2d 659 (La.1984); State v. Knighton, 436 So.2d 1141 (La.1983); State v. James, 431 So.2d 399 (La.1983); State v. Lindsey, 428 So.2d 420 (La.1983).
Accordingly, the defendant's conviction and sentence are affirmed.
LEMMON, J., concurs and assigns reasons.
WATSON, J., concurs but disagrees with the holding in State v. David concerning prior criminal history.
CALOGERO, J., dissents and assigns brief reasons.
CALOGERO, Justice, dissenting.
Defendant requested a jury charge concerning the penalties authorized for first and second degree murder, including that second degree murder carried a mandatory sentence of life imprisonment without benefit of probation, parole or suspension of sentence. The trial judge refused to give the charge. As the majority concedes, this was error. Unlike the majority, I find it impossible to conclude, with any degree of certainty, that the error was harmless. Had just one juror been swayed to persist in finding defendant guilty of second rather than first degree murder, defendant would not have been found guilty of first degree murder and thereafter exposed to the death penalty which was ultimately imposed.
NOTES
[1] Assignment of Error No. 2 was expressly abandoned by defendant in brief. We have reviewed it nevertheless and found it to be without merit.
[2] Defense counsel's reason for the late filing was that the ruling on the defendant's capacity to stand trial was not made until February 9 and that under C.Cr.P. 642 no steps in the prosecution are permitted until a ruling is made on capacity to proceed, once that issue is raised.