No. 84–6864.  BUSBY v. LOUISIANA.  Sup. Ct. La.  Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN and JUSTICE BLACKMUN join, dissenting.

Once again this Court has declined to correct an error of constitutional magnitude with a defendant's life in the balance.  The petitioner's death sentence was unconstitutionally imposed under last Term's decision in *Caldwell* v. *Mississippi*, 472 U. S. 320 (1985), and this Court's refusal to vacate that sentence is an unwarranted departure from procedures that we follow routinely in the most insignificant case.

I

The petitioner was convicted of first-degree murder.  At the sentencing phase of his trial, his counsel attempted to impress upon the jury the significance of its role, in light of the growing number of executions in Louisiana and the Nation as a whole.  Counsel admonished the jurors that, should they decide upon the death penalty, they should " 'give it with the appreciation that it'll be carried out.' "  464 So. 2d 262, 266 (La. 1985).  The prosecutor responded by arguing to the jury:

" 'Though it's difficult to stand before you ladies and gentlemen and ask you to consider imposing upon anyone the pen-

alty of death, but in order to make your task easier, we'll state for you that first of all, you have a solemn obligation to live up to your oath. Second of all, that whatever you decide will be recommendations—and recommendations to the Judge, for the Judge to impose the death penalty. It will be the Judge that sentences this defendant to whatever the sentence might be. You make recommendations.'" *Ibid.*

The jury sentenced petitioner to death.

## II

After the Louisiana Supreme Court had affirmed petitioner's conviction and death sentence, and after his petition for certiorari had been filed, this Court decided *Caldwell.** There, the Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U. S., at 328–329. In *Caldwell*, the prosecutor argued to the jury that the State Supreme Court would automatically review the death sentence. This Court noted that the jury might not understand the limits on appellate review, and might conclude that the ultimate determination of the appropriateness of a death sentence for that defendant would lie with the court. *Id.*, at 330–331. Furthermore, whether or not the jury was misled as to the appellate court's function, it might decide to "delegate" its responsibility to the court. *Id.*, at 332.

In the present case, we need not speculate about the misleading nature of the prosecutor's argument, for it flatly misstated Louisiana law. In Louisiana, a jury's decision in favor of death is binding on the court. La. Code Crim. Proc. Ann., Art. 905.8 (West 1984). Thus, the prosecutor's argument in this case was not an "accurate statement of a potential sentencing alternative," as in *California* v. *Ramos*, 463 U. S. 992, 1009 (1983); cf. *Caldwell*, *supra*, at 342 (O'CONNOR, J., concurring in part and concurring in judgment). Rather, the prosecutor's argument urged the jury

---

*This chronology explains petitioner's failure to raise the *Caldwell* violation in his petition for certiorari. This Court, of course, may correct a plain error not presented in the petition for certiorari. *Washington* v. *Davis*, 426 U. S. 229, 238 (1976). The Louisiana Supreme Court expressly decided the issue, so there is no jurisdictional bar to our considering it.

"to minimize the importance of its role," 472 U. S., at 333, with statements that were both improper under *Caldwell* and factually inaccurate.

Although the Louisiana Supreme Court acknowledged that the prosecutor's remarks were "troublesome," 464 So. 2d, at 266, it concluded that the jury was not misled. The court noted that the trial judge had remarked to the jury, at the *beginning* of the sentencing phase, that the jury "is given the authority to make a binding recommendation to the trial judge as to the sentence." *Ibid.* The judge had also stated that he would impose life imprisonment if the jury could not reach a unanimous recommendation. *Id.*, at 267.

Those statements are inadequate to cure the prosecutor's inaccurate remarks. The judge did not correct the prosecutor's statements in his charge, nor did he acknowledge the binding effect of the jury's decision. Indeed, he compounded the error by telling the jurors that it was their duty "'to make your recommendation as to the sentence that the Court should impose.'" *Ibid.* Because the prosecutor had affirmatively and unambiguously informed the jury that the ultimate responsibility for the decision rested with the judge, the jury could easily have believed that its decision to impose the death penalty was not automatically binding. In this situation, one cannot possibly conclude that the improper argument "had no effect on the sentencing decision," *Caldwell, supra,* at 341. Petitioner's death sentence, therefore, cannot stand.

### III

The death sentence in this case was imposed in violation of the Eighth and Fourteenth Amendments as interpreted in *Caldwell, supra.* Our usual practice when an intervening decision of the Court may affect a lower court's decision is to grant the petition, vacate the judgment or sentence as appropriate, and remand for further consideration in light of the intervening case. See, *e. g., Wainwright* v. *Henry,* 463 U. S. 1223 (1983). Because the Court has declined to follow our general practice, with such enormous consequences for the petitioner, I dissent.