LOBRANO, Judge.
Defendant, Darold Nunnery, was indicted by the Orleans Parish grand jury for the June 7, 1984 aggravated rape of a two year old, a violation of LSA R.S. 14:42.[1] Defendant was arraigned and pled not guilty on August 6, 1984. On September 27, 1984 defendant was found guilty as charged by a twelve member jury.
On October 4, 1984 defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.
FACTS:
Idella Moye testified that she resides at 3118 Desire Parkway in the City of New Orleans with her daughter and her daughter’s four children. On June 7, 1984, she left the apartment at approximately 6:00 a.m. to go to work and asked Lionel Wallace to watch the children until their mother returned. At approximately 9:00 a.m. she called to check on the children and was surprised to learn that defendant, Darold Nunnery was babysitting with the children instead of Lionel Wallace. Later, around 11:30 a.m. when Mrs. Moye called again to check on the children defendant informed *161 her that Danielle, age two, had fallen on a board and that a neighbor, Cheryl Montgomery, was preparing to take the child to the hospital.
Lionel Wallace testified that when he left for work at about 8:20 a.m. the children appeared normal and were dressed in their play clothes. Wallace left defendant in charge until the children’s mother returned home.
Cheryl Montgomery testified she visited the Moye apartment between 8:30 a.m. and 8:45 a.m. Present in the apartment were defendant, the children and two repairman who were working in the bathroom. When she left only defendant and the children remained in the apartment. Danielle appeared normal at that time.
Shortly after 11:00 a.m., Ms. Montgomery was summoned back to the Moye apartment by defendant who told her that Danielle had fallen on a board from the chest of drawers and was injured. She found Danielle on the sofa in a semi-conscious state, lying in a pool of blood. The child’s pants were soaked in blood. She pulled off Danielle’s pants and observed that “she was bleeding like from internally”. She then took the child to Charity Hospital where she was met by Danielle’s grandmother, Mella Moye.
At Charity Hospital, Dr. Lynn Cody performed the initial exam on the child and found it necessary to call in an OB/GYN surgeon, Dr. Kim Hardy. Both physicians testified that the injury sustained by the child was not consistent with those that would have been sustained by falling on a board, but were consistent with the type of trauma sustained if there had been penile penetration.
Defendant was asked to bring the board and the child’s clothing to the hospital. Donna Pierce, a social worker for the Child Protection Agency, and Detective Addison Thompson, New Orleans Police Department Child Abuse Unit, were also called to investigate the possible rape of Danielle.
Later, defendant made an oral statement in the presence of Pierce and Thompson in which he admitted fondling the child’s vagina as well as inserting his finger and his penis. Subsequent to this admission, defendant gave a videotaped statement in which he admitted sexually fondling the child with his hands and inserting his finger in her vagina but denied penile penetration. Still later, a short time after the taping session, defendant admitted penile penetration to Sgt. Teddy Daigle.
Defendant appeals his conviction and sentence asserting the trial court erred in denying him access to Dr. Kim Hardy’s report.
The defense filed pre-trial motions specifically requesting from the State the results of physical examination, scientific tests and/or experiments made in connection with the case which were intended for use at trial. On August 31, 1984, the State filed its answers and made available to the defense the physical evidence, lab reports and other documents it intended to use at trial. This list included Dr. Lynn Cody’s report but made no mention of a report by Dr. Kim Hardy. During the trial a conference was held outside the presence of the jury during which the defense objected to the anticipated testimony of Dr. Hardy. The State specified the exact nature of Dr. Hardy’s testimony and declared that no physical evidence or reports would be introduced relative to his testimony. The defense was likewise called upon to declare that no documents would be introduced by their witness, Dr. Simon Ward, as the defense had not granted the State discovery.
Upon being called as a witness, Dr. Hardy testified as to his personal observations of the victim’s injuries and as to the surgical procedure he used to repair the injury. At no time did the state make reference to his report or surgical notes, nor did Dr. Hardy. However, during cross-examination the defense made frequent references to Dr. Hardy’s report and as to whether or not he had reviewed the child’s chart before testifying. The trial court denied each defense request to have Dr. Hardy’s report produced.
*162 As a result of the trial court’s denial of this request, defendant asserts he was denied proper discovery under C.Cr.P. Art. 719 as recently construed in State v. Lingle, 461 So.2d 1046 (La.1985).
In Lingle, the Louisiana Supreme Court expanded C.Cr.P. Art. 719[2] to include the crime scene technician’s report as discoverable and excluded it from the “work product” exception listed in C.Cr.P. Art. 723.[3] The Court relied on Federal Code of Criminal Procedure and the Federal Rules and interpreted the phrase “intended for use at trial” as stated in C.Cr.P: Art. 719 to include documents to be marked as evidence as well as those relied on or referred to by any government witness. Thus the Court significantly expanded the scope of the criminal discovery rules.
Technically, we believe the trial court’s ruling was not in accord with the Lingle decision, however we find that said ruling does not constitute reversible error for several reasons.
First, the procedural posture of Lingle at the time it was decided coupled with the Supreme Court's pronouncements in State v. Busby, 464 So.2d 262 (La.1985) decided the same day, convince this Court there is no reversible error in this case. Lingle was a remedial writ application from the trial court’s denial of pre-trial discovery by the defendant. The trial had not yet commenced, and thus the Supreme Court was not confronted with an issue of reversible error. However, in Busby, the defendant had been tried and convicted, but was complaining on appeal of pre-trial discovery errors made in the lower court. In rejecting defendant’s argument, the Supreme Court stated:
“... the defendant has failed to allege that any prejudice resulted from the state’s omission. The state’s failure to comply with discovery requests does not constitute reversible error unless actual prejudice results to defendant. (Citation omitted) In this case, no prejudice resulted, since the excluded items were merely cumulative, and since the evidence against the defendant was overwhelming.” Busby, supra at 264.
In this ease, like Busby we find no prejudice to the defendant and strong evidence against him. Defendant asserts that he could not properly cross-examine Dr. Hardy. He claims that the physical evidence of the cut or tear in the victim’s vaginal area generated considerable diversity of medical opinion. An examination of the transcript shows that both Dr. Cody and Dr. Hardy described the wound as a four centimeter laceration at the posterior entrance of the vaginal opening in the six o’clock position. Both physicians were firm in their opinion that the wound was not consistent with an injury from a board, but consistent with the trauma from penile penetration. Dr. Hardy’s testimony was cumulative to that of Dr. Cody. Furthermore, defendant conducted vigoras cross-examination of both physicians, as well as presented the testimony of his own medical expert, Dr. Ward who contradicted the conclusion of Dr. Cody. We therefore find no prejudice to the defendant by the trial court's ruling, and thus no reversible error.
*163 Secondly, and in addition to the above reasons, we note that Lingle was decided after the decision in the instant case. Based on the facts before us, we refuse to give retroactive effect to the Lin-gle standards. As to whether or not new rulings should be applied to cases that have not yet completed the appeal process, the common factor determining retroactivity to a new rule is whether the rule goes to the integrity of the fact-finding process.[4] We find that the integrity of the fact-finding process would not be effected by the application of Lingle to the instant case, and therefore refuse to apply it retroactivity.
For the above and foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. LSA R.S. 14:42:
"A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is- prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
B. For the purposes of Paragraph (5), “participate” shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
C. Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”

. C.Cr.P. Art. 719 provides:
"Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of physical or mental examination, and of scientific tests or experiments made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial.”

. C.Cr.P. Art. 723 provides:
“Except as provided in Arts. 716, 718, 721 and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda, or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney, or to agents of the state.”

. McIlvaine v. Henderson, 295 F.Supp. 60, rehearing 300 F.Supp. 1104 (E.D.La.1969) (held applicable). State v. Jones, 404 So.2d 1192 (La. 1981) (held applicable) State v. Bergeron, 371 So.2d 1309 (La.1978) (held applicable) State v. Spears, 363 So.2d 479 (La.1978) (held applicable) State v. Kelly, 362 So.2d 1071 (La.1978) cert denied, 439 U.S. 1118, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979) (held not applicable) State v. Lovett, 345 So.2d 1139 (La.1977) (held not applicable); City of New Orleans v. Harris, 283 So.2d 207 (La.1973) (held applicable); State v. Beer, 252 La. 756, 214 So.2d 133 (1968) (held not applicable).