ARMSTRONG, Judge.
The defendant, Billy Monroe, was found guilty of one count of armed robbery, a violation of LSA-R.S. 14:64. He was sentenced as a multiple offender to serve 198 years at hard labor without benefit of parole, probation or suspension of sentence, sentence to run consecutively with any others imposed.[1] It is from this conviction and sentence that the defendant has appealed.
Quida Davis, a teller at the Carrollton Street branch of the Bank of New Orleans, testified that on August 15, 1980 the defendant approached her bank window and placed a paper bag on the counter. He mumbled something incomprehensible and placed a second bag on the counter. Ms. Davis noticed that the butt of a pistol was protruding from the bag. She then took approximately $1,000.00 cash out of her drawer and gave it to the defendant. Ms. Davis pressed the silent alarm which activated a security camera in the bank. She later identified the defendant from a photographic lineup and at a physical lineup. At trial, she identified him in the courtroom and also in the picture taken by the bank’s camera.
A review of the record reveals that there are no errors patent.
By his first assignment of error the defendant argues that the trial judge erred in denying defense counsel’s motion to withdraw and his own motions to recuse counsel which were made prior to and on the day of trial. He further argues ineffective assistance of counsel.
The record reflects that C. Michael Winters, an indigent defender, was originally appointed to represent the defendant whose case was then in Section “D”. The defendant filed a motion for withdrawal of appointed counsel and recusal of OIDP. On December 9, 1980, Judge Marullo, Section “D”, permitted Winters and OIDP to withdraw, and he appointed the law firm of Deutsch, Kerrigan and Stiles to represent the defendant. Marullo also recused himself because he knew of a battery the defendant had perpetrated on Judge Augustine, Section “I”.
On July 21, 1981, Francis Weller of Deutsch moved to withdraw as counsel and the court granted his motion.
On February 19,1982, the court (presumably Judge Waldron at this point) appointed Warren DeAgano, indigent defender. On *326 June 30, 1982, the defendant filed another motion to recuse.
On September 13,1982, Paul Weidenfeld, of OIDP, appeared and filed a motion to withdraw as counsel which was granted. The court appointed Tulane Law Clinic.
On September 24, 1982 Calvin Johnson appeared and was appointed counsel as representative of Loyola Law Clinic. Sometime late in December 1982, the defendant filed a “Motion to Withdraw Counsel” which was denied December 29, 1982. Johnson then moved that he be permitted to withdraw, which was also denied.
On March 24, 1983, the defendant moved to recuse the district attorney, which motion was denied. He moved for a speedy trial which was granted.
Finally, on the morning of trial, the defendant argued that Calvin Johnson had not adequately prepared the case. Johnson moved to withdraw based on the fact that the defendant did not want his counsel. Johnson stated: “[B]ased on his attitude it’s difficult for me to go forward honestly with this case and that it is at least possible that I will be affected by Monroe’s attitude and either do something that I should not do or fail to do something that I should do.” The trial judge denied the motion.
A defendant’s right to the assistance of counsel is guaranteed by both the federal and state constitutions. U.S. Const. Amend VI, La. Const, of 1974, Art. 1 § 13. Further, the right of a defendant to counsel of choice has been implemented by C.Cr.P. art. 515 which provides:
“Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court. The court may assign other counsel in substitution of counsel previously assigned or specially assigned to assist the defendant at the arraignment.”
The Louisiana Supreme Court has consistently held that the right to counsel cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. State v. Champion, 412 So.2d 1048, 1050 (La.1982); State v. Johnson, 389 So.2d 1302, 1304 (La.1980); State v. Jones, 376 So.2d 125, 129 (La.1979); State v. Lee, 364 So.2d 1024, 1028 (La.1978); State v. Anthony, 347 So.2d 483, 487 (La.1977).
Once the trial date has arrived, the question of withdrawal of counsel largely rests with the discretion of the trial court, and its ruling will not be disturbed in the absence of a clear showing of abuse of discretion. State v. Seiss, 428 So.2d 444, 447 (La.1983); State v. Leggett, 363 So.2d 434, 436 (La.1978); State v. Cousin, 307 So.2d 326, 328 (La.1975); State v. Boudoin, 257 La. 583, 588-89, 243 So.2d 265, 267 (La.1971).
In this case the defendant was appointed a series of indigent defenders: three from the Orleans Indigent Defender Program, and one each from a private law firm, the Tulane Law Clinic, and, finally, the Loyola Law Clinic. The record reflects that the defendant had personal conflict with all appointed counsel. We find no abuse of the trial court’s discretion in denying the motions to recuse.
As for defendant’s claim of ineffective assistance of counsel it is well settled that the issue whether defendant was denied effective assistance of counsel is more properly raised by application for a writ of habeas corpus in the district court, where a full evidentiary hearing may be conducted if warranted. State v. Seiss, supra; State v. Ratcliff, 416 So.2d 528 (La.1982). However, when the record reveals sufficient evidence to decide the issue of ineffective counsel raised by assignment of error on appeal, in the interest of judicial economy, that issue may be considered. Seiss, supra; Ratcliff, supra.
Appellant's claims of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), State v. Fuller, 454 So.2d 119, (La.1984). The defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors *327 so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Strickland, supra 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive the defendant of a fair trial. Id. The defendant must make both showings in order to prove that counsel was so ineffective as to require reversal.
In this case, the defendant maintains that counsel rendered ineffective assistance for three reasons: counsel did not call witnesses desired by the defendant; he did not adequately prepare the defendant for testimony; he allowed the defendant to be tried in prison clothes; and he did not notify defendant of the date of trial. These arguments are not convincing ones. The defendant makes no showing of how the witnesses he would have called could possibly have refuted the overwhelming evidence presented by the State. No law suggests that a criminal defendant has to be “prepared” for testimony so that he will not make incriminating references. The defendant had been apprised of the charges against him for three years prior to his testimony. Any argument that the defendant was “surprised” by the trial lacks merit.
Lastly, the defendant argues that he should not have been tried in prison clothes. In State v. Fraley, 499 So.2d 1304, 1310 (La.App. 4th Cir.1986), this court pointed out:
A defendant cannot be compelled to stand trial before a jury while dressed in identifiable prison clothes. Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). When examining this issue on appeal, the court has focused on whether the defendant demonstrated that his clothing at trial was readily identifiable as prison attire, State v. Leggett, 363 So.2d 434 (La.1978), State v. Claiborne, 483 So.2d 1301 (La.App. 4th Cir.1986), whether the defendant was actually compelled after objection to stand trial in prison clothes, State v. Conger, 483 So.2d 1100 (La.App. 4th Cir. 1986), and whether the defendant was prejudiced by wearing the prison clothing. State v. Tennant, 262 La. 941, 265 So.2d 230 (1972). Additionally, to preserve the issue on review, the defendant must object at trial to being compelled to attend court proceedings in prison clothes. Estelle v. Williams, supra.
In the instant case, the defendant made a plea to the jury at the end of his case. His testimony consisted of a recitation of alleged injustices, perpetrated upon him by the police, his attorneys and the courts. Included in this narrative was the defendant’s complaint relative to being tried in prison clothes. This “objection” occurred after the entire trial had been had. There is no evidence that he was compelled to stand trial in prison clothes, or that he was prejudiced. Fraley, supra. Defendant’s arguments have no merit whatsoever.
Further, the record reveals that the attorney cross-examined every witness, the key witness with particularly extensive questioning, and recrossed several. He objected on defendant’s behalf throughout the trial. We find that the attorney handled the case more than adequately, especially in light of the long list of attorneys who could not or would not handle the case because of this particular defendant’s allegations and complaints.
By his second assignment of error the defendant alleges that the trial court imposed an excessive sentence when it sentenced the defendant to 198 years at hard labor. We find this assignment to be without merit.
The imposition of a sentence, although within the statutory limit, may be unconstitutionally excessive if it is “grossly out of proportion to the severity of the crime” or “is nothing more than the purposeless and needless imposition of pain and suffering.” State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. den., Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). See also State v. Nealy, 450 So.2d 634 (La.1984); State v. Davis, 449 So.2d 452 (La.1984); State v. Savage, 454 So.2d 288 (La.App. 4th Cir.1984); State v. Swift, 449 So.2d 654 (La.App. 4th Cir.1984). *328 In order to insure adequate review by the appellate court, there must be an indication in the record that the trial court considered both the aggravating and mitigating factors set forth in C.Cr.P. art. 894.1 in determining the defendant’s particular sentence. State v. Davis, supra; State v. Quebedeaux, 424 So.2d 1009 (La.1982), appeal after remand, 446 So.2d 1210 (1984); State v. Swift, supra. A sentence imposed by the trial court should not be disturbed absent a manifest abuse of discretion. State v. Pearson, 425 So.2d 704, 715 (La.1982); State v. Johnson, 443 So.2d 744 (La.App. 4th Cir.1983).
In this case, the trial judge had just sentenced defendant in another case to life imprisonment for aggravated rape, 100 years for attempted aggravated rape, and 198 years each for two counts of armed robbery. In addition, he was sentenced to four years for contempt with all sentences running consecutively. See State v. Thomas, 447 So.2d 1053 (La.1984). The trial judge made continual references during the sentencing phase of this case to the other case.[2] He referred to the reasons he cited in that case as being applicable here. The record in that case discloses that Judge Waldron meticulously complied with LSA- *329 C.Cr.P. 894.1, quoting directly from that article. We find, then that by reference to the other case, he complied with 894.1 in this case.
Once adequate compliance with C.C.P. 894.1 is found, the court may look to similar cases in this court and other courts to determine if the sentence is excessive. In State v. Isaac, 487 So.2d 565 (La.App. 4th Cir.1986) this court affirmed a sentence of ninety-nine years at hard labor for armed robbery where the defendant and three others, all armed with pistols, brutalized and robbed the employees and proprietor of a store.
The court noted the especially heinous nature of the offense. The defendant had prior arrests for simple burglary, aggravated battery, aggravated assault, aggravated escape, simple battery, and possession of a firearm. He had a prior conviction for armed robbery. In State v. Washington, 482 So.2d 118 (La.App. 4th Cir.1986). This court upheld the maximum sentence for armed robbery where the victim was robbed at gunpoint, taken by force and sexually assaulted. In State v. Gordon, 477 So.2d 881 (La.App. 4th Cir.1985), this court upheld the maximum sentence of 198 years where the defendant was convicted of armed robbery and pled guilty to a multiple bill. The defendant’s prior record, including five armed robberies and four burglaries, coupled with the fact that the defendant terrorized his victim, justified the sentence.
In State v. Mosley, 466 So.2d 733 (La.1985) writ denied 468 So.2d 1202 (La.1985), this court affirmed consecutive sentences of ninety-nine years for conviction of three counts of armed robbery. Although the trial judge failed to articulate consideration for consecutive sentences, this court did not remand since each sentence individually was essentially a life term.
In the instant case, the defendant had convictions for aggravated rape, attempted aggravated rape, and two counts of armed robbery. Under these facts, it does not appear that this sentence was excessive.
By his third assignment of error the defendant alleges that the trial court erred in allowing the prosecution to use evidence not disclosed prior to trial.
The record reveals that on December 16, 1982, the defense filed a motion for discovery requesting “the opportunity to inspect and copy, photograph, or otherwise reproduce any and all photographs, films, or negatives, made in connection with the above-captioned case, taken by bank cameras, which are in the possession, custody or control of the State, and which the State intends to use as evidence at trial.” The State answered that it would comply.
It appears that the State did not have the photographs of the defendant taken in the bank at the time the motion was made, but later came into possession of them. The state did not supply the photographs to the defendant. At trial, the state attempted to introduce one of the photographs.
It is clear that the state should have turned over the photograph to the defense when it came into possession of it since the state is under a continuing obligation to produce requested discoverable evidence. LSA-C.Cr.P. Art. 729.
LSA-C.Cr.P. Art. 729.5(A) provides the sanctions a court may impose when a party violates a discovery order:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed or enter such other order, other than dismissal as may be appropriate.
The purpose of the discovery rules of the Code of Criminal Procedure is the elimination of unwarranted prejudice which could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. Toomer, 395 So.2d 1320 (La.1981). However, the state’s failure to comply with *330 discovery procedures in a criminal case will not automatically demand a reversal. Only if the defendant suffers prejudice as a result of a failure to disclose is he entitled to a reversal. State v. Jackson, 454 So.2d 398 (La.App. 4th Cir.1984).
In State v. Busby, 464 So.2d 262 (La.1985) cert. den. Busby v. Louisiana, 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 165 (1985), the State filed its answers to discovery on the day of trial. Three days prior, the State had orally informed the defense of its intent to use certain items at trial. The disputed items included photographs of the victim’s car (stolen by defendant), a map drawn by defendant which purported to show the location where he had hidden the victim’s wallet, several in-culpatory oral statements made by the defendant to the police and witnesses, and various Miranda warning cards and waiver of rights forms. The Supreme Court found no prejudice resulting from the State’s omission to provide the defense with the objects “since the excluded items were merely cumulative, and since the evidence against the defendant was overwhelming. There was nothing learned from the disputed» items that was not contained in the defendant’s confession or in his statements from the witness stand.” Busby, supra 464 So.2d at 264-265.
In this case, as in Busby, the evidence of the photograph was merely cumulative: it added to the identification testimony of the witness who had already identified him at a photo line-up, a physical line-up, and at trial. We find the evidence against the defendant was overwhelming. In addition, the defendant was fully aware that the witness would identify him.
By assignment of error four, the defendant contends that the trial court erred in not allowing the defense to show the jury video tapes of the defendant's arrest.
The defendant argues that these tapes were necessary to resolve conflicts in testimony regarding events immediately following his arrest. The court denied the request on relevancy grounds. We agree.
LSA-R.S. 15:441 defines relevant evidence as that tending to show the commission of the offense and the intent, or tending to negate the commission of the offenses and the intent. We cannot find how a tape of the defendant exiting his house under arrest can tend to prove or disprove the commission of the offense or the intent. This assignment of error is without merit.
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Defendant was charged by bill of information with three counts of armed robbery, which were severed.

. On June 3, 1983 in case 278-830 (KA-3889) Judge Waldron stated:
In this particular case, as in every case, the Court must review the aggravating and mitigating circumstances. In terms of possible mitigation, the Court must consider whether the defendant’s criminal conduct caused or threatened serious harm, and whether or not he contemplated that his conduct would cause or threaten serious harm. Armed robbery in and of itself is a "promiscuous offense,” Justice James Dennis has just written, in a May 23rd, 1983 Louisiana Supreme Court opinion, State of Louisiana ex rel Stanley Sullivan versus Ross Maggio. Justice Dennis, writing for the majority, further went on to point out that "the use of a dangerous weapon creates a great risk of emotional and physical harm to the victim, the witnesses, and at times, even to the offender. Although firm figures are difficult to obtain, it would appear that robbery killings have increased four or five fold since the early 1960’s,” but we’re not just confronted here with that promiscuous offense. We are confronted here with perhaps the most degrading and humiliating offense of all, aggravated rape, perpetrated at gunpoint by a total stranger on a totally innocent woman, and then an attempt to commit the same degrading and humiliating offense on her female companion, who had just observed the first lady’s rape.
Their only crime? Walking home late at night from a movie. In this particular case, Mr. Monroe, I have reviewed your entire background. I have observed you, and I can find nothing in my mind that would cause me to believe that in any way you could have ever thought that your conduct would not cause or threaten serious harm. That is an understatement, obviously. I cannot find in any way that you acted under strong provocation.
I can find no substantial grounds tending to excuse or justify your criminal conduct, though failing to establish a defense.
I can find that the victims in this case in no way induced or facilitated the commission of this crime. As I previously commented, their only "crime," so to speak, their only mistake, was walking down the street, coming from a movie, late in the evening. There is no way that you can or will compensate the victims of this crime for the damage and injury they have sustained.
Obviously the mitigating circumstance of your having no prior history of criminal delinquency or activity, or that you’ve led a law-abiding life, clearly, clearly (repeated) is not present.
A mitigating circumstance to consider is whether your criminal conduct was as a result of circumstances unlikely to recur. Obviously in light of your prior record, and these particular crimes, that is not present.
As to your character and attitudes indicating that you're unlikely to commit another crime, I obviously do not find that that is present.
I do not find that in any way, even if it was humanly possible or legally possible, to grant probation, that you would be particularly likely to respond affirmatively to it.
I'm not aware of your family background, but even if it was a situation where you had dependents, I could not consider that imprisonment entailing excessive hardship on them would be justification for my imposing any sentence other than the sentence I’m about to impose.
I find that there's an undue risk that in any period of a suspended sentence or probation you will commit another crime. I find that you are in need of correctional treatment in a custodial environment that can be provided most effectively by a commitment to an institution, and I find that any sentence less than the sentence I'm about to impose would depreciate the seriousness of your crime.
I find that you epitomize the type of individual that every person in the criminal justice system, after first affording to you and determining that every constitutional right and safeguard has been afforded to you, once that is done and you are adjudicated guilty, every possible mechanism in the criminal justice system that has as part of its duty and role in that system, to keep people off the street, should do whatever is humanly and legally possible to see that that happens, that you remain off the street for the rest of your natural life.