WILLIAMS, Judge.
On March 19,1987 the State of Louisiana filed three bills of information against defendant, Lawrence F. Fairbanks. The first bill of information charged defendant with three counts of vehicular homicide in violation of LSA-R.S. 14:32.1 (case no. 319-009), the second bill charged him with one count of vehicular negligent injuring in violation of LSA-R.S. 14:39.1 (case no. 319-010), and the third bill charged him with one count of vehicular negligent injuring in violation of LSA-R.S. 14:39.1 (case no. 319-011). The alleged crimes occurred on January 24, 1987 and involved a single traffic accident.
Following evidentiary hearings on April 27 and May 6, 1987, the trial court denied defendant’s motion to suppress chemical test evidence by rule issued on June 11, 1987. (Vol. 2, R. 65-73). And on that date defendant entered a plea of guilty to all charges under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the trial court’s denial of his motion to suppress. He was sentenced on September 18, 1987, to serve five years at hard labor, running consecutively, on each of the three counts of vehicular homicide (case no. 319-009), and to serve six months in Parish Prison, running consecutively, on both counts of vehicular negligent injuring (case nos. 319-010 and 319-011).
Defendant now appeals, claiming the trial court erroneously denied his motion to suppress the chemical test evidence and imposed an excessive sentence. We need not address the excessive sentence issue because, under State v. Rowell, 517 So.2d 799 (La.1988), we find the trial court wrongfully denied defendant’s motion to suppress the chemical test. Therefore, defendant’s pleas of guilty and sentences are vacated and the matter is remanded to the trial court for trial.
FACTS
From the testimony presented at the hearing on defendant’s motion to suppress, held on April 27 and May 6, 1987, we find the facts as follows:
On January 24, 1987 at approximately 3:00 a.m., Lawrence Fairbanks drove his car the wrong way up an 1-10 exit ramp near Irish Bayou, colliding head-on with another vehicle carrying five persons. Three were killed; two passengers and Fairbanks were injured.
Officer MoSes Petiss, New Orleans Police Department Fatality Unit, arrived at the accident scene to assist other police investigators with the investigation. The primary investigator briefed Petiss on the accident and directed him to follow the ambulance transporting defendant to Methodist Hospital. After the emergency room personnel stabilized defendant, Petiss introduced himself to defendant and told him he was being arrested for driving while intoxicated. (Vol. 3, Tr. 69) When defendant responded, Petiss smelled alcohol emanating from defendant’s breath.
Petiss read Fairbanks his rights relating to chemical tests for intoxication, and defendant verbally consented to participate in the test. Officer Frank Willis, D.W.I. Enforcement Unit, assisted Petiss with the chemical test. He gave Petiss a “blood kit” and a rights form, and then listened while Petiss read the form to defendant. The attending emergency room physician, Dr. Gobind Singh, heard defendant consent to the blood alcohol analysis test. Dr. Singh then drew two vials of defendant’s blood and handed them to Officer Petiss, who sealed them into the “blood kit.”
Two days later, Edgar Dunn, a N.O.P.D. forensic chemist,[1] performed the gas chro-matograph test on the vials of defendant’s blood, in conformity with the regulations for blood analysis prescribed by the Department of Public Safety. 11 La.Reg. 259 (1985). Dunn twice performed the gas chromatograph test and subsequently de *1147 termined defendant’s blood alcohol level was 0.22 percent (22%).
MERITS
By his first assignment of error, defendant claims the trial court erroneously denied his motion to suppress the chemical analysis evidence. His argument concentrates upon the Louisiana Supreme Court’s recent decision in State v. Rowell, 517 So. 2d 799 (La.1988), where the court reversed the trial court’s adverse ruling on the defendant’s motion to suppress because the State failed to prove the regulations promulgated by the Department of Public Safety insures the integrity and reliability of blood alcohol analysis.
In order to convict defendant of vehicular homicide and vehicular negligent injuring, under the statutory provisions pertinent to the facts of this case, defendant must be under the influence of alcohol as determined by chemical tests administered under the provisions of LSA-R.S. 32:662 or his blood alcohol concentration is 0.10 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood. LSA-R.S. 14:32.1; LSA-R.S. 14:39.1. A legal presumption exists that a person is under the influence of alcoholic beverages if at the time of the offense there was 0.10 percent or more by weight of alcohol in the person’s blood. LSA-R.S. 32:662. The Department of Public Safety is authorized by LSA-R.S. 32:663 to approve satisfactory techniques or methods to insure the accuracy of blood alcohol analysis. The regulations promulgated by the Department for blood alcohol analysis are found in 11 La.Reg. 259 (1985).
A. Safeguards: the Integrity and Reliability of Blood Alcohol Analysis
Repeatedly, the Louisiana Supreme Court has recognized the importance of establishing safeguards to guarantee the accuracy of chemical tests used in criminal prosecutions. State v. Rowell, 517 So.2d 799, 800 (La.1988). Thus, in order for the State to avail itself of the statutory presumption of a defendant’s intoxication arising from a chemical analysis of his blood under LSA-R.S. 32:662, the State must show that the State has promulgated detailed procedures which will insure the integrity and reliability of the chemical test and also show that the State has strictly complied with the promulgated procedures. State v. Rowell, 517 So.2d at 800.
However, in its recent review of the sufficiency of Louisiana’s promulgated regulations on blood analysis, the Supreme Court found the regulations currently in effect fail to insure the integrity and reliability of blood alcohol analysis. State v. Rowell, 517 So.2d 799 (La.1988). The Court found the regulations insufficient because they (a) do not specify the type of proficiency testing required of persons seeking a permit to conduct blood analysis; b) do not provide for the repair, maintenance, or inspection of the gas chromato-graph; c) do not require a person seeking a permit to conduct blood analysis have such maintenance and repair skills; d) do not sufficiently provide for the preservation of the blood sample, especially as alcohol may be manufactured in the blood if not properly preserved; and e) do not sufficiently insúre the accuracy of the chemicals used to calibrate the gas chromatograph. 517 So.2d at 802. Accordingly, the Supreme Court found the State could not meet its burden of proving the regulations insured integrity and reliability of blood alcohol analysis because the regulations do not contain provisions for repair, maintenance, inspections, cleaning, certification and chemical accuracy. 517 So.2d at 802.
As the regulations in effect at the time defendant’s blood analysis was conducted are the same regulations the Supreme Court found inadequate in Rowell, and as the State’s evidence at the motion to suppress hearing did indicate the promulgated regulations are sufficient to insure the accuracy and reliability, we find the State failed to meet its burden of proving the regulations insured the integrity and reliability of the defendant’s blood analysis.
B. Retroactivity of Rowell
As this case is before the Court on direct appellate review, meaning the convictions are not final, our application of Rowell is a partially retroactive one. See State v. *1148 Jackson, 480 So.2d 263, 269 (La.1985). The determinative factor that prompts our application of the new ruling is that Rowell’s rule goes to the integrity of the fact-finding process. State v. Nunnery, 482 So.2d 159, 163 (La.App. 4th Cir.1986). The integrity and reliability of the fact finding of intoxication is the gravamen of both Ro-well and defendant’s appeal.
The wrongful introduction of the chemical test result, which by law presumes a defendant to be intoxicated, is so prejudicial to defendant that a resulting conviction cannot stand even if there is other evidence of intoxication. State v. Tanner, 457 So.2d 1172, 1174 (La.1984); State v. Rowell, 517 So.2d at 802. Likewise, defendant’s pleas of guilty, based upon the trial court’s denial of his motion to suppress chemical test evidence and reserving his right to appeal, cannot stand.[2]
Due to the ambit of State v. Rowell, we are compelled to grant defendant’s motion to suppress. Accordingly, the defendant’s pleas of guilty and sentences are vacated and the matter is remanded to the trial court so that the defendant may replead and be tried.[3] Our decision does not prevent the State from charging defendant with other crimes he may have committed in violation of LSA-Title 14.
VACATED AND REMANDED.

. At the Motion to Suppress hearing, Dunn testified he had attended two schools of instruction on blood analysis and had also participated in an additional course in gas chromatograph analysis.

. Because of this conclusion, we need not address defendant’s remaining assignment of error.

. Remanding this matter to the trial court to rehear the motion to suppress, so that the State could attempt to prove the integrity and reliability of the blood alcohol analysis performed on this defendant’s blood, would be a futile gesture.
The holding of State v. Rowell is that the test results of the blood analysis could not be used because the regulations promulgated by the Department of Public Safety failed to insure the integrity and reliability of the analysis. Rowell emphasized the importance of establishing safeguards to guarantee the accuracy of chemical tests used in criminal prosecutions. Thus, for the State to avail itself of the presumption of intoxication arising from the chemical analysis of Fairbanks’ blood, the State had to prove the procedural regulations as promulgated at the time of the analysis insured the integrity and reliability of the tests. In Rowell, the Supreme Court found the promulgated regulations applicable to this case were inadequate.