607 So.2d 793 (1992)
STATE of Louisiana
v.
Richard H. SIMON.
No. KA 91 1240.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
Writ Denied February 5, 1993.
*795 John D. Schoonenberg, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
Paul E. Brown, Lockport, for appellant.
Before LOTTINGER, C.J., FOIL, J., and COVINGTON[*], J. Pro Tem.
FOIL, Judge.
The defendant, Richard H. Simon, was charged by grand jury indictment with two counts of distribution of dilaudid (Counts 1 and 2), a violation of LSA-R.S. 40:967 A(1), and obstruction of justice (Count 3), a violation of LSA-R.S. 14:130.1 A(1)(a). He pled not guilty and, after trial by jury, was found guilty as charged on all three counts.[1] The defendant received three concurrent sentences of ten years at hard labor, with credit for time served. The defendant has appealed, alleging five assignments of error, as follows:
*796 1. The trial court erred in denying the defendant's motion for a continuance.
2. The trial court erred in allowing Commander Louis Hyatt to remain in the courtroom as the State's representative.
3. The jury verdict was contrary to the law and the evidence.
4. The trial court erred in imposing an excessive sentence.
5. The trial court erred in denying the defendant's motions for new trial and post-verdict judgment of acquittal.

FACTS
On the afternoon of May 17, 1989, Commander Louis Hyatt of the Terrebonne Parish Narcotics Strike Force received a telephone call from a confidential informant, Justine Melancon. Ms. Melancon informed Commander Hyatt that she was contacted by the defendant and Thomas Dennis, who were attempting to purchase dilaudid. Melancon agreed to cooperate with Commander Hyatt and arrange a drug transaction. Hyatt and Terrebonne Parish Assistant District Attorney Allen Helm went to a local pharmacy and obtained fifty dilaudid pills. Hyatt gave the pills to Agent Randall Basco, who met with Ms. Melancon and the defendant at Dennis' apartment on Main Street in Houma, Louisiana, later that afternoon to discuss the price and quantity of dilaudid pills. They reached an agreement to sell the defendant fifty dilaudid pills for $500.00.
At approximately 7:15 p.m. that evening, Ms. Melancon and Agent Basco returned to Dennis' apartment. Dennis and the defendant were at a nearby offtrack betting parlor. Dennis' girlfriend, Gloria Soudelier, invited Ms. Melancon and Basco into the apartment and telephoned the betting parlor. A few minutes later, Dennis and the defendant arrived at the apartment and the transaction took place. Agent Basco observed the defendant give $500.00 to Ms. Melancon, who then handed the money to Basco. Basco then gave the defendant a paper bag containing a plastic pill bottle. Inside the pill bottle were fifty dilaudid pills. The defendant opened the pill bottle and gave three pills to Ms. Melancon.
Shortly after Ms. Melancon and Agent Basco left the apartment, Basco signaled the other officers conducting surveillance, who immediately entered the apartment, arrested the occupants, and began a search for illegal drugs. Agent Todd Hohensee entered the bathroom and observed that the toilet was running. The defendant was inside the bathroom with a syringe in his mouth. Agent Hohensee and the defendant struggled and actually fell into the bathtub. Commander Hyatt entered the bathroom and kicked the defendant in the head in order to subdue him. Agent Patrick Babin entered the bathroom and retrieved a plastic pill bottle and a one-hundred-dollar bill from the toilet. After the defendant was subdued and placed under arrest, he was advised of his Miranda rights. The defendant admitted that he purchased the dilaudid for his personal use and that he flushed the pills down the toilet because he did not want to get caught with them. A total of forty-four dilaudid pills were recovered. A search of the apartment yielded forty-one dilaudid pills. Agent Terry Legendre discovered these loose pills on the floor in a bedroom closet. Additionally, immediately after the investigation ended, Ms. Melancon returned to Agent Basco the three dilaudid pills given to her by the defendant at the conclusion of the transaction.
The defendant testified that on May 17, 1989, he returned to Houma from his job offshore. He went to see Thomas Dennis about renting an apartment. During the conversation, Dennis informed him that Justine Melancon was selling drugs. The defendant became upset because he loaned Ms. Melancon $100.00 several months earlier, after she promised him that she was no longer dealing drugs. The defendant decided to seek repayment of the loan and went with Dennis to Ms. Melancon's house. After an unsuccessful attempt to collect money owed to her, Ms. Melancon indicated that she would call the defendant later when she had the money to repay him. Later that afternoon, Ms. Melancon *797 stopped at Dennis' apartment and told the defendant she would bring him the money that evening.
At approximately 5:30 p.m., the defendant and Dennis went to an offtrack betting parlor. Later, they received a message that Dennis' girlfriend, Ms. Soudelier, telephoned. When they returned to Dennis' apartment, Ms. Melancon and Basco were inside. The defendant became concerned because he did not know Basco. When Ms. Melancon informed the defendant that she was unable to sell fifty dilaudid tablets that evening and offered them to the defendant, he suspected that Basco and Ms. Melancon were planning some kind of a "rip-off" or an armed robbery. After questioning Ms. Melancon further, the defendant became even more concerned that a robbery was about to occur and he began to panic. The defendant decided to purchase the fifty dilaudid pills for $500.00 in order to avoid a "rip-off" or robbery. He explained that he believed it was better to lose $500.00 than to risk the robbery of everyone in the apartment (the defendant, his girlfriend, Tammy Guidry, Dennis, and Dennis' girlfriend, Ms. Soudelier). The defendant gave Ms. Melancon $500.00 and received the fifty dilaudid pills. Ms. Melancon informed the defendant that her "issue" for arranging the transaction was five dilaudid pills, which the defendant gave to her. When Ms. Melancon and Basco left, the defendant immediately flushed the remaining pills down the toilet. The defendant denied having a syringe in his mouth when the officers entered the bathroom.

ASSIGNMENT OF ERROR NO. ONE
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a continuance. This case was set for trial on Monday, July 2, 1990. Apparently, the defendant requested and was granted a twenty-four-hour continuance to consult with his family and make a decision as to whether he would accept a plea bargain or go to trial. The following date, the defendant indicated he would go to trial, but he requested another continuance to retain a private attorney rather than go to trial with the public defender appointed to handle the case. The trial court denied the motion for another continuance. The defendant then indicated that he would prefer to represent himself at trial stating: "Justlike I said, your Honor, I don't feel the case was handled properly and I don't feel enough time was put into it and I just feel that I could possibly better handle the situation myself." The defendant also stated that he and the public defender were not "in total accord on how to handle this matter." After extensive questioning on the defendant's decision to represent himself, the trial court granted the motion and allowed the defendant to conduct his own trial defense. The trial court also ordered the public defender to sit with the defendant during the trial and assist him if necessary.
In his brief to this Court, the defendant contends that the public defender led him into a false sense of security by stating that he could arrange a plea bargain for a suspended sentence and fine. Based on this assumption, the defendant did not seek private counsel. However, three days before trial, the public defender informed the defendant that the plea bargain negotiations were unsuccessful. The defendant was working offshore at the time and was unable to obtain another attorney. On the day of trial, the defendant was offered a plea bargain agreement with a sentence of seven years. The trial court granted the defendant a day to confer with his family and make a decision. The defendant's family informed him that they would borrow enough money to hire a private attorney. The defendant contacted a private attorney, who stated that he would accept the case if the defendant could get a continuance. The following day, the defendant was forced to represent himself "because he did not feel as though he could trust his court appointed attorney."
The defendant contends that the trial court erred in failing to conduct a hearing on his motion for a continuance to determine whether or not the defendant's charges of ineffective assistance of counsel were true. The defendant contends that the public defender was ineffective because: *798 (1) he failed to file a motion to suppress; (2) he did not attempt to discover information concerning the prior criminal history of the confidential informant, Justine Melancon; and (3) he was generally not prepared to go to trial.
A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based. La.C.Cr.P. art. 707. The granting or denial of a motion for continuance rests within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion. State v. Spencer, 444 So.2d 354, 356 (La. App. 1st Cir.1983), writ denied, 488 So.2d 694 (La.1986). The denial of a motion for a continuance is not reversible absent a showing of prejudice, and when the motion is grounded on insufficient time to prepare a defense, the preparation time must have been so short as to undermine the basic fairness of the proceedings. State v. Johnson, 463 So.2d 620, 625 (La.App. 1st Cir. 1984).
An oral motion for a continuance presents nothing for review on appeal. State v. Penny, 486 So.2d 879, 887 (La. App. 1st Cir.), writ denied, 489 So.2d 245 (La.1986). However, where the occurrences that allegedly make the continuance necessary arose unexpectedly, and the defense had no opportunity to prepare a written motion, an appellate court may review the denial of the motion. State v. Spencer, 444 So.2d at 356. Presumably, since the defendant was aware of the situation for at least one day (having been granted a twenty-four-hour continuance on July 2), he had sufficient opportunity to file a written motion for another continuance. Nevertheless, even assuming that the failure to file a written motion could be excused due to some misunderstanding, lack of communication, or disagreement on strategy (i.e., whether or not to accept the plea bargain) between the defendant and the public defender, for the reasons which follow, we conclude that the trial court did not abuse its discretion in denying the defendant's oral motion for a continuance.
The right to counsel cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. State v. Seiss, 428 So.2d 444, 447 (La.1983). While the right to counsel of choice in a criminal trial is guaranteed by the United States and Louisiana Constitutions, there is no constitutional right to make a new choice on the date a trial is scheduled to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. State v. Leggett, 363 So.2d 434, 436 (La. 1978). The right to counsel of choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. State v. Lee, 364 So.2d 1024, 1028 (La.1978). Once the day of trial has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial court. The Louisiana Supreme Court has frequently upheld the trial court's denial of motions for a continuance made on the day of trial when the defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel. State v. Leggett, 363 So.2d at 436. The instant offense occurred on May 17, 1989. The grand jury indictment was filed on June 1, 1989. The trial was set for July 2, 1990. In denying the defendant's motion for another continuance, the trial court noted that the indictment was filed more than one year before and concluded that the defendant had ample opportunity to discuss the matter with his family and with any other attorney.
Concerning the defendant's claim of ineffective assistance of counsel, we note the difference between the allegations presented in his brief to this Court and the statements made to the trial court in support of his decision to conduct his own defense. The defendant did not inform the trial court that he felt the public defender was ineffective because of a failure to file a motion to suppress and/or a failure to discover Justine Melancon's criminal record. Instead, the defendant referred to an apparent difference of opinion between himself *799 and the public defender as to how the case should be handled and stated that the public defender had not spent enough time on the matter.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Teeter, 504 So.2d 1036, 1039-1040 (La.App. 1st Cir.1987). The allegations of ineffective assistance of counsel raised in the defendant's brief cannot be sufficiently investigated from an inspection of the record alone. At the trial, Agent Legendre testified that the search began after Agent Eugene Callahan obtained a consent to search the residence. Perhaps the public defender concluded that a motion to suppress would be meritless, since the police officers apparently had consent to search. As to the issues of general trial preparations by the public defender and the discovery of Justine Melancon's criminal record, only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated. Accordingly, for the reasons stated above, we conclude that the trial court did not abuse its discretion in denying the defendant's oral motion for a continuance in order to secure private counsel.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TWO
In this assignment of error, the defendant contends that the trial court erred in permitting Commander Louis Hyatt to be exempted from sequestration as the State's representative.
The purpose of sequestration is to assure that a witness will testify as to his own knowledge of the events, to prevent the testimony of one witness from influencing the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Revere, 572 So.2d 117, 125 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991). The resolution of sequestration problems is within the sound discretion of the trial court. State v. Ondek, 584 So.2d 282, 298 (La. App. 1st Cir.), writ denied, 586 So.2d 539 (La.1991). On appeal, the reviewing court will look at the facts of each case to determine whether or not a sequestration violation resulted in prejudice to the accused. State v. Lopez, 562 So.2d 1064, 1066 (La. App. 1st Cir.1990).
Louisiana Code of Evidence Article 615 provides, in pertinent part:
A. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. However, this Article does not authorize exclusion of:
* * * * * *
(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney; ...
When the prosecutor announced his intention to designate Commander Hyatt as the State's representative or case agent, the defendant objected but did not state any reason therefor. The trial court overruled the objection, citing the Code of Evidence. Generally, the problem with exempting a witness as the State's representative is the potential danger that his testimony might be influenced by listening to the testimony of the other witnesses. See State v. Lopez. However, the State complied with Comment (d) to Article 615, and State v. Lopez, by having Commander Hyatt testify as the first witness. Therefore, Commander Hyatt's testimony on direct examination could not possibly have *800 been influenced by the testimony of the other witnesses.
In his brief to this Court, the defendant contends that, when Agent Todd Hohensee was called to testify by the defendant, he changed his testimony from that previously given on direct examination. Although the defendant does not explain how or why he concludes that Agent Hohensee changed his testimony, presumably he refers to an alleged discrepancy between Officer Hohensee's testimony on direct examination and his testimony when recalled to the stand by the defendant. The alleged discrepancy involves whether or not Agent Hohensee testified on direct examination that the defendant had a syringe in his mouth during the struggle immediately preceding his arrest. Both Commander Hyatt and Agent Hohensee testified on direct examination that the defendant was subdued after a struggle. When Agent Hohensee entered the bathroom, he observed the defendant with a syringe in his mouth. The two men struggled and actually fell into the bathtub. Commander Hyatt testified that, because Agent Hohensee's gun was drawn and the defendant had a syringe in his mouth, he kicked the defendant in the head in order to subdue him. When the defendant recalled Agent Hohensee to the stand, he suggested that Agent Hohensee changed his testimony about the syringe being in the defendant's mouth during their struggle. The defendant cross-examined Agent Hohensee at length about this matter.
In his brief, the defendant now concludes: "The defendant submits that it is obvious to him that Commander Hyatt had to have `coached' Officer Hohensee before Officer Hohensee testified, and that this would never have happened had Commander Hyatt been sequestered like the other witnesses, instead of being able to have been in the courtroom and listened to the initial testimony." Initially, we note that the defendant's allegation that Commander Hyatt "coached" Agent Hohensee has little or no bearing on the issue of whether or not Commander Hyatt was properly exempted as the State's representative pursuant to Article 615. If this allegation were true, and Commander Hyatt actually coached Agent Hohensee, such a sequestration violation could have occurred, regardless of whether or not Commander Hyatt was designated as the State's representative, by the two men simply discussing their trial testimony, comparing notes, etc. Furthermore, this allegation of a sequestration violation is mere speculation by the defendant. There is no evidence in the record to support an allegation that Commander Hyatt coached Agent Hohensee. See State v. Lopez, 562 So.2d at 1066; State v. Revere, 572 So.2d at 126.
For the above reasons, this assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. THREE AND FIVE
In assignment of error number three, the defendant contends that the verdict was contrary to the law and evidence. In assignment of error number five, defendant contends that the trial court erred in denying his motions for post-verdict judgment of acquittal and a new trial. The defendant's motion for new trial was based on three grounds: (1) the verdict was contrary to the law and evidence; (2) several rulings by the trial court led to prejudicial and reversible error; and (3) the ends of justice would be served by granting a new trial. Initially, we note that denial of the motion for a new trial based on the interests of justice (La.C.Cr.P. art. 851(5)) is not reviewable on appeal. State v. Walder, 504 So.2d 991, 994 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). Furthermore, the defendant's argument that several trial court rulings led to prejudicial and reversible error is a reference to the other assigned errors addressed herein. Having found no merit to those assignments of error, we likewise find no merit to the defendant's cumulation of errors argument. Finally, the remaining ground for a new trial, that the verdict was contrary to the law and evidence, contains the same basis as assignment of error number three. These arguments actually refer to the sufficiency of the evidence (as did the defendant's *801 motion for post-verdict judgment of acquittal) and will be addressed together.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
The defendant was convicted of two counts of distribution of dilaudid. Count one involved the defendant's purchase of fifty dilaudid pills from Agent Basco for a price of $500.00. Count 2 consisted of the defendant's payment of three dilaudid pills to the confidential informant, Ms. Melancon, for her role in arranging the transaction between himself and Agent Basco.
In his brief to this Court, with reference to Count one, the defendant argues that the law distinguishes between the buyer and the seller. In other words, the defendant contends that the offense of distribution pertains only to the seller, i.e., the person who distributes the illegal drugs, not to the buyer, who merely receives them.[2] For the reasons which follow, we disagree with the defendant's contention.
At the time of the instant offense, LSA-R.S. 40:967 provided, in pertinent part:
A. Manufacture; distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II; ....
Dilaudid is a controlled dangerous substance listed in LSA-R.S. 40:964 Schedule II A(1)(1).
The term "distribute" is defined in LSA-R.S. 40:961(13) as follows:
"Distribute" means to deliver a controlled dangerous substance whether by physical delivery, administration, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner. "Distributor" means a person who delivers a controlled dangerous substance as herein defined.
The term "deliver" is defined in LSA-R.S. 40:961(9) as "the transfer of a controlled dangerous substance whether or not there exists an agency relationship." The jurisprudence has defined "deliver" as transferring possession or control. State v. Parker, 536 So.2d 459, 463 (La.App. 1st Cir. 1988), writ denied, 584 So.2d 670 (La.1991). Transfer of possession or control, i.e., distribution, is not limited to an actual physical transfer between the culpable parties. Rather, distribution may be accomplished by the imposition of a third party. State v. Parker, 536 So.2d at 463.
The defendant's argument that, as a purchaser, he did not commit the offense of distribution ignores the law of principals. LSA-R.S. 14:24 provides: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." We find that the defendant's conduct rendered him guilty as a principal in two respects. Persons who aid and abet in the commission of a crime are guilty as principals although they do not directly commit the act constituting the offense. See State v. Hutchins, 502 So.2d 606, 608 (La.App. 3d Cir.1987); State v. *802 Bernard, 441 So.2d 817, 821 (La.App. 3d Cir.1983), writ denied, 445 So.2d 439 (La. 1984). The defendant did not directly commit the offense of distribution of dilaudid because he did not sell, distribute, dispense, deliver, etc. the dilaudid pills. However, as a purchaser, he participated in the transaction by paying $500.00 for the dilaudid pills and receiving them. Therefore, in this manner, he was a principal to the act of distribution charged in Count one. Furthermore, a defendant may be guilty as a principal in the crime of distribution if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance. State v. Parker, 536 So.2d at 463. See also State v. Seay, 521 So.2d 1206, 1214 (La.App. 2d Cir.1988). The defendant initially approached the confidential informant, Ms. Melancon, who acted as an agent in the transaction between Agent Basco and the defendant. The defendant directly counseled or procured another who acted as an agent in the distribution of a controlled dangerous substance. Again, in this respect, he was likewise guilty as a principal to the act of distribution charged in Count one.
The defendant also asserts a defense of entrapment. Specifically, the defendant contends that the State failed to counter his defense of entrapment and did not prove that he was predisposed to commit these offenses.
The law on entrapment is set forth in State v. Brand, 520 So.2d 114, 117 (La. 1988), as follows:
Entrapment is a defense which arises when a law enforcement official or an undercover agent acting in cooperation with such an official, for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so.... The defense is designed to deter the police from implanting criminal ideas in innocent minds and thereby promoting crimes which would not otherwise have been committed.... Obviously, law enforcement agents should not persuade citizens to commit crimes, and the defense is recognized to prevent shocking police inducement of the perpetration of a crime.
Entrapment is an affirmative defense.... Thus, the burden was on defendant to prove entrapment by a preponderance of the evidence. The question whether the government agent implanted the criminal idea in the mind of an innocent person to induce the commission of a crime that would not otherwise be committed is one for the jury....
The entrapment defense will not be recognized when the law enforcement official merely furnishes the accused with an opportunity to commit a crime to which he is predisposed.... In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.... Thus, the focus in determining an entrapment defense is on the conduct and predisposition of the defendant, as well as the conduct of the government agent. (Citations and footnote omitted).
The defendant testified that he contacted Justine Melancon to obtain repayment of a $100.00 loan made to her at some time in the past. He specifically denied any interest in purchasing drugs. The defendant explained that he was surprised and confused when he discovered Ms. Melancon at the house with a stranger (Agent Basco). When Ms. Melancon asked the defendant to purchase fifty dilaudid pills for $500.00, defendant believed that Melancon and Basco were going to conduct a "rip-off" of some kind or possibly an armed robbery. According to the defendant, he purchased the fifty dilaudid pills for $500.00 in order to avoid the "rip-off" or robbery. The defendant concluded that it would be better to lose $500.00 (the purchase price of the fifty dilaudid pills) rather than risk the robbery of everyone in the apartment. He claimed that he gave five dilaudid pills to Ms. Melancon and flushed the remaining pills down the toilet as soon as Melancon and Basco left the house. Accordingly, the relevant inquiry is whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the defendant did not prove by a preponderance of the evidence *803 that he was entrapped. State v. Deville, 524 So.2d 1334, 1337 (La.App. 1st Cir.), writ denied, 531 So.2d 263 (La.1988).
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. In the instant case, the unanimous guilty verdicts indicate that the jurors accepted the testimony of the State witnesses and rejected the defendant's theory of entrapment. That conclusion is supported by the record. At the sentencing hearing, the trial court characterized the defendant's trial testimony as "a far-fetched (sic) story." We agree with this assessment of the entrapment defense presented herein.
The defendant also contends that the evidence is insufficient to support his conviction of obstruction of justice. In his brief, the defendant states: "[H]ad the defendant known that the police were involved in this set of circumstances, he would not have bought the pills. Thus, since he could not have been aware of police involvement, he certainly was not obstructing justice by destroying the pills in question."
LSA-R.S. 14:130.1 provides, in pertinent part:
A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; ...
According to the defendant's trial testimony, he gave Ms. Melancon five pills and, as soon as she and Basco left the house, he flushed the remaining pills down the toilet. On the other hand, Ms. Melancon testified that she received only three pills from the defendant, which she turned over to Agent Basco immediately after the investigation. Forty-one dilaudid pills were recovered in a bedroom closet. Therefore, if the testimony of the State's witnesses is accepted, the defendant flushed six dilaudid pills down the toilet. When Agent Hohensee entered the bathroom, the toilet was running. The defendant had a syringe in his mouth and did not surrender without a struggle. As Agent Hohensee and Commander Hyatt subdued the defendant, Agent Babin recovered a plastic pill bottle and a one-hundred-dollar bill from the toilet. Given these facts, we find that the evidence is sufficient to establish the offense of obstruction of justice. See State v. Papillion, 556 So.2d 1331, 1336 (La.App. 3d Cir.1990).
After a careful review of the record, we find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of obstruction of justice and two counts of distribution of dilaudid, and that he failed to prove the defense of entrapment by a preponderance of the evidence.
For the above reasons, these assignments of error are meritless.

ASSIGNMENT OF ERROR NO. FOUR
In this assignment of error, the defendant contends that the trial court erred in imposing excessive sentences.
The Code of Criminal Procedure sets forth items which must be considered *804 by the trial court before imposing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed in Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
Before imposing sentence, the trial court reviewed a copy of the defendant's "rap sheet" contained in a Confidential Louisiana State Police Report. Although the instant offenses constituted the defendant's first felony convictions, he had at least one misdemeanor conviction, as well as many felony and misdemeanor arrests. The court found that, during any period of probation, there would be an undue risk that the defendant would be involved in some form of crime. Reviewing the circumstances of the instant offenses, it was noted that the defendant's conduct was not excused or justified. The court concluded that the defendant was in need of correctional treatment and stated that any lesser sentences would deprecate the seriousness of the offenses. Considering the above, we find that the trial court adequately complied with the Article 894.1 guidelines.
The defendant was convicted of two counts of distribution of dilaudid and one count of obstruction of justice. Distribution of dilaudid is punishable by imprisonment at hard labor for not less than five years nor more than thirty years, in addition to an optional fine of not more than $15,000.00. See LSA-R.S. 40:967 B(1); State ex rel. Marks v. Thompson, 596 So.2d 193 (La.1992). As constituted by the circumstances herein, obstruction of justice is punishable by imprisonment at hard labor for not more than twenty years and/or a fine of not more than $50,000.00. See LSA-R.S. 14:130.1 B(2). The defendant's three concurrent sentences of ten years at hard labor were one-third the possible penalty for distribution of dilaudid and one-half the possible penalty for obstruction of justice; no fines were imposed. Considering the nature of the instant offenses, the defendant's criminal record, and the reasons for sentencing given by the trial court, we find no abuse of discretion in the sentences imposed.
This assignment of error is meritless.
For the foregoing, reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[*] Judge Grover L. Covington, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court.
[1] Another charge against the defendant, conspiracy to distribute dilaudid, a violation of LSA-R.S. 40:967 A(1) and 979, was nol-prossed immediately before trial. Additionally, a co-defendant, Thomas B. Dennis, Jr., was named in the indictment along with the defendant. Dennis apparently obtained a severance at some point in the proceedings and was scheduled to go to trial sometime after the defendant. The record gives no indication as to the disposition of the charges against Dennis, and he is not a party to the instant appeal.
[2] In his brief under assignment of error number three relating to the sufficiency of the evidence, the defendant raised an additional argument. Specifically, he stated that the prosecutor erred in misleading the jury by instructing them that the law pertaining to the charges of distribution of dilaudid did not differentiate between the buyer and the seller. However, this allegation of prejudicial conduct by the prosecutor was not assigned as error. In accord with the well-established jurisprudence of the Louisiana Supreme Court, this Court will not consider arguments which are neither assigned as error nor relate to errors patent on the face of the record. State v. Williams, 319 So.2d 404 (La.1975); State v. Spears, 525 So.2d 329, 330 n. 4 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (La.1988). Furthermore, as will be noted herein, the prosecutor's statement was not erroneous since it was a reference to the law of principals.