744 So.2d 181 (1999)
STATE of Louisiana
v.
Norvel D. TREPAGNIER.
No. 97-KA-2427.
Court of Appeal of Louisiana, Fourth Circuit.
September 15, 1999.
*184 Pamela S. Moran, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Defendant/Appellant, Norvel D. Trepagnier.
Harry F. Connick, District Attorney, Charles E.F. Heuer, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Attorneys for Appellee, State of Louisiana.
Court composed of Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY and Judge DENNIS R. BAGNERIS Sr.
MURRAY, Judge.
Norvel D. Trepagnier appeals his convictions and sentences for attempted armed robbery, aggravated battery and illegal use of a weapon. We affirm.

FACTS
On November 24, 1996 at approximately 5:00 in the morning, Robert Thompson and his cousin were talking to a girl on Palmyra Street in New Orleans. Mr. Thompson was leaning against the side of his car, while his cousin sat in the passenger seat. Another car approached the wrong way on the one-way street. A masked man armed with a shotgun jumped out from the backseat of this car and stated, "Don't move and give it up." As Mr. Thompson hurried to get into his car, the man shot him, and his cousin shot back at the assailants. The assailants drove off and Mr. Thompson's cousin drove him to the hospital. Mr. Thompson had been hit under the eye and across his shoulder and back. Although Mr. Thompson had seen four individuals in the assailants' car, he was unable to recognize any of them.
Demond Lucas testified that on the morning in question, he went "riding around" with Mr. Trepagnier, Brandon McDonald and someone he knew only as Barry. Mr. Lucas was driving the wrong way on a one-way street when Mr. Trepagnier, who was sitting in the front passenger seat, told him to stop. Mr. Trepagnier and Barry got out of the car and began shooting at Mr. Thompson and his friends. When one of the victims shot back at them, hitting Mr. McDonald, the group retreated and Mr. Lucas took Mr. McDonald to the hospital. Mr. Trepagnier left before Mr. Lucas got to the hospital. Mr. Lucas waited outside the hospital while Mr. McDonald received treatment. The police questioned Mr. Lucas at the hospital and took him to the First District Police Station where he gave a statement identifying Mr. Trepagnier as the shooter.
New Orleans Police Officer Richard Williams was initially assigned to investigate the shooting. At Charity Hospital, he spoke with Robert Thompson, then with Brandon McDonald. Officer Williams also spoke with Demond Lucas. As a result of these interviews, Mr. Lucas was arrested, and Mr. Trepagnier was identified as a suspect in the incident.
Officer Terence Philips, who took over investigation of the crimes from Officer Williams, testified that he found an abandoned car underneath the interstate near Charity Hospital. A blood-soaked bandana *185 was found on the rear seat of the vehicle, and the rear window had been shot out. The steering wheel had been defeated and a screwdriver was found in the vehicle. After Officer Phillips was made aware of the shooting victims, he went to the hospital and spoke with Officer Williams. Officer Philips testified that Mr. Lucas voluntarily identified Mr. Trepagnier as the shooter. He also learned from Mr. Lucas that Mr. Trepagnier could be located at Mr. Lucas' residence. When the officers found Mr. Trepagnier at Mr. Lucas' residence, he lied about his identity.
Police Officer Teddy Fambro, a crime scene technician, testified that a nine-millimeter gun was seized from Mr. Thompson's car and a twelve-gauge shotgun was found lying in the 3500 block of Palmyra Street. The defense stipulated that these guns had been fired in this incident, but did not admit that it was Mr. Trepagnier who fired the shotgun.

TRIAL COURT PROCEEDINGS
Norvel D. Trepagnier was charged by bill of information with one count of attempted armed robbery, a violation of La. R.S. § 14:(27)64; one count of attempted second degree murder, a violation of La. R.S. § 14:(27)30.1; and one count of illegal use of a weapon in a crime of violence in violation of La. R.S. § 14:94 F. Demond Lucas was also charged with attempted armed robbery in connection with the incident. However, on the morning of trial Mr. Lucas pled guilty as an accessory after the fact in exchange for his testimony against Mr. Trepagnier.
As trial began, Mr. Trepagnier objected to representation by his court-appointed public defender and declared his intention to retain a private attorney. The trial judge explained, however, that Mr. Trepagnier had had ample opportunity to have retained a lawyer and proceeded to try the case. The jury subsequently found Mr. Trepagnier guilty of attempted armed robbery, aggravated battery, and illegal use of a weapon.
At a subsequent hearing, the court sentenced Mr. Trepagnier as follows: as to count one, attempted armed robbery, forty-nine years at hard labor without benefit of probation, parole or suspension of sentence; as to count two, aggravated battery, ten years at hard labor; and as to count three, illegal use of a weapon, ten years at hard labor. The judge ordered these sentences to be served concurrently with each other, but consecutive to the sentences imposed that same day in another case.
The State charged Mr. Trepagnier as a second offender as to the attempted armed robbery conviction, based on a prior conviction for unauthorized use of a movable. Mr. Trepagnier pled guilty to the multiple bill and was re-sentenced to the same forty-nine years originally imposed on the attempted armed robbery conviction. Mr. Trepagnier's subsequent motion to reconsider the sentence was denied. This appeal followed.

ERRORS PATENT
A review of the record for errors patent reveals one. On count three, Mr. Trepagnier was convicted of illegal use of a weapon in violation of La. R.S. § 14:94 F. This statute mandates that the sentence be served without the benefit of probation, parole, or suspension of sentence. The sentence imposed in this case, as reflected by the transcript, is illegally lenient because it does not exclude the possibility of probation, parole, and suspension of sentence as required by the statute. However, this error in sentencing will not be corrected because the issue has not been raised by the State. State v. Phillips, 92-1063, p. 5 (La.App. 4th Cir.2/29/96), 670 So.2d 588, 592, writ denied, 96-2131 (La.9/5/97), 699 So.2d 85.
There is also a discrepancy between the sentencing transcript and the Mr. Trepagnier's sentence on count two, the aggravated battery conviction. *186 The transcript establishes that he was sentenced in compliance with La. R.S. § 14:34, which does not preclude the possibility of probation, parole, or suspension of sentence. However, both the minute entry and commitment form suggest that the sentences on all three counts are to be served without the benefit of probation, parole, or suspension of sentence. Because the transcript prevails, this inconsistency is not a sentencing error. State v. Tanner, 96-0708, p. 5 (La.App. 4th Cir.5/21/97), 696 So.2d 111, 114, writ denied, 97-1665 (La.11/21/97), 703 So.2d 1306, and cases cited therein. Nevertheless, the commitment form must be amended to permit the Department of Corrections to accurately determine Mr. Trepagnier's eligibility for parole on counts two and three in accordance with La. R.S. § 15:574.4.
No other errors were detected.

ASSIGNED ERRORS
Mr. Trepagnier makes three assignments of error. First, he asserts that he was denied his constitutional right to the attorney of his choice. Second, he contends that the State failed to present sufficient evidence to support his convictions. Third, he claims that the trial court erred in imposing an unconstitutionally excessive sentence.

SUFFICIENCY OF THE EVIDENCE
Mr. Trepagnier contends that the testimony and evidence adduced at trial was insufficient to support his convictions because neither his identity as the shooter nor any intent to commit a robbery was proven.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. Id. at 1310. If rational triers of fact could disagree as to the interpretation of the evidence, the rational factfinder's view of all the evidence most favorable to the prosecution must be adopted. Id. The discretion of the trier of fact will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. at 1309-1310. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. § 14:64. "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose." La. R.S. § 14:27 A.
Mr. Trepagnier argues that he took nothing from the victim, Mr. Thompson, and also that Mr. Thompson failed to establish through his testimony that it was he, Mr. Trepagnier, who shot him. However, the offense of attempted armed robbery does not require that the robber succeed in his act. What is required is an act or omission tending toward the accomplishment of his object. Mr. Thompson *187 testified that an unknown masked man approached him with a shotgun and said, "Don't move and give it up." This expression demonstrates an intent to take something of value from Mr. Thompson, possibly his car. In addition, Mr. Lucas corroborated Mr. Thompson's description of these events and explained that Mr. Trepagnier was trying to rob Mr. Thompson and his friends.
From these testimonies, it is evident that someone shot at Mr. Thompson and his friends intending to rob them. Mr. Lucas, who was in a position to identify that person, testified that it was Mr. Trepagnier. The record, therefore, contains evidence from which a rational trier of fact could find that Mr. Trepagnier intended to rob Mr. Thompson and his friends.
Regarding the second count, La. R.S. § 14:64 defines aggravated battery as "a battery committed with a dangerous weapon." Mr. Thompson testified that he was shot under the eye, across the shoulder and his back, for which reason his cousin conveyed him to the hospital. Mr. Lucas testified that Mr. Trepagnier shot at the victims with a shotgun, later recovered from the crime scene, and the defense stipulated that this shotgun had been fired. These testimonies support the jury's finding of aggravated battery against Mr. Trepagnier.
As to the third count, the crime of illegal use of weapons is defined as "the intentional or criminally negligent discharging of any firearm ... where it is foreseeable that it may result in death or great bodily harm to a human being." La. R.S. § 14:94. In this case Mr. Lucas testified that Mr. Trepagnier shot at Mr. Thompson and his friends with a shotgun in an attempt to rob them. Mr. Trepagnier, therefore, intentionally discharged a firearm, which resulted in harm to Mr. Thompson. Whether or not Mr. Thompson suffered great bodily harm, it was foreseeable that any one of the victims could have been seriously injured.
The record, therefore, contains sufficient evidence that these crimes were committed. The real question concerns the identity of the perpetrator who discharged the shotgun. The substance of the defense argument is that the victim, Mr. Thompson, failed to link Mr. Trepagnier to the crimes and that Mr. Lucas was not a credible witness. The victim need not identify his assailant if he could not possibly do so as long as another person who should possess this information reveals the identity. Because the shooter was masked, Mr. Thompson could not identify him. However, Mr. Lucas, a coperpetrator, identified Mr. Trepagnier as the person who shot Mr. Thompson. The jury heard all the testimony and evidently found Mr. Lucas credible. The credibility of witnesses is for the trier of fact to determine. State v. Green, 613 So.2d 263 (La.App. 4th Cir.1992).
Viewing all of the evidence in the light most favorable to the prosecutor it cannot be said that no rational factfinder could have found Mr. Trepagnier guilty beyond a reasonable doubt of attempted armed robbery, aggravated battery and illegal use of a weapon. Therefore, the evidence was sufficient to support the convictions in this case. This assignment of error is without merit.

RIGHT TO COUNSEL
Mr. Trepagnier contends that the trial court's refusal to allow him to retain a private attorney violated his constitutional right to counsel of his choice, necessitating reversal of his convictions.
The Sixth Amendment to the United States Constitution guarantees that the accused in all criminal prosecutions shall have the assistance of counsel for his defense. Our state Constitution further provides that at each stage of a criminal proceeding, "every person is entitled to assistance of counsel of his choice." La. Const. art. I, § 13. The right to the assistance of counsel is so fundamental to the constitutional guarantee of a fair trial that *188 its denial cannot be considered harmless error. Holloway v. Arkansas, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). However, "the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system." State v. Leggett, 363 So.2d 434, 436 (La.1978). Thus, the Louisiana Supreme Court has repeatedly upheld the trial court's denial of motions made on the day of trial based upon the defendant's dissatisfaction with appointed counsel. See State v. Seiss, 428 So.2d 444, 447 (La. 1983) and cases cited therein.
Mr. Trepagnier alleges that because he was incarcerated, he was not able to retain a private attorney during the period between his indictment and trial. He thus maintains that the trial court's denial of his motions was arbitrary and is reversible error per se. Mr. Trepagnier distinguishes State v. Simon, 607 So.2d 793 (La. App. 1st Cir.1992), writ denied, 612 So.2d 77 (La.1993),[1] arguing that whereas the Simon defendant had more than one year to retain counsel of choice, he had only eighty days between the filing of the charges and trial. In addition, he points out that in State v. Monroe, 513 So.2d 323 (La.App. 4th Cir.1987), denial of a motion to withdraw was held to be proper because the defendant had had a series of six attorneys appointed for him, while he "was forced to continue with the first attorney appointed to him by the trial court."
In the instant case, the bill of information was filed on January 24, 1997 and the arraignment was held four days later. On that date, January 28th, Mr. Meyer of the indigent defender program was appointed to represent Mr. Trepagnier on these charges, and subsequently assumed his defense on additional charges in another case in the same section of court. After four continuances, trial was held on June 9, 1997. Although Mr. Trepagnier objected to proceeding with Mr. Meyer as counsel, the defense attorney indicated he was prepared to go forward.
The facts here are much less compelling than those found insufficient justification for a reversal in State v. Seiss, supra. In Seiss, less than six weeks had elapsed between the appointment of counsel at arraignment and the trial date, and the defense attorney had met with Mr. Seiss only twice during that period. In the present case, by comparison, Mr. Trepagnier had more than four months between arraignment and trial, during which time Mr. Meyer had also handled another case for the defendant. While a private attorney had been contacted by the Seiss defendant two days before trial, Mr. Trepagnier was present in court for four earlier trial settings, yet had not indicated any dissatisfaction with his court-appointed lawyer, nor informed the court that he intended to retain private counsel, at any time prior to trial. Most significantly, Mr. Seiss' attorney openly declared that he was unprepared for trial, but in the instant case it was only Mr. Trepagnier, not Mr. Meyer, who objected to proceeding as scheduled.
The facts of this case as well as the jurisprudence on the issue support the conclusion that the trial court did not abuse its discretion when it denied Mr. Trepagnier's request, made at trial, to withdraw his court-appointed counsel and retain a private lawyer. Therefore, we find no violation of the defendant's right to counsel of his choice, and must reject this assignment of error as meritless.

EXCESSIVE SENTENCES
In his final assignment of error, Mr. Trepagnier contends that the trial court imposed unconstitutionally excessive sentences on counts one and two, the convictions for attempted armed robbery and aggravated battery. He argues that although *189 both sentences fall within the statutory range, they are disproportionate to the severity of the crimes and were imposed without adequate articulation of the trial court's reasons.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence "is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." State v. Dorthey, 623 So.2d 1276, 1280 (La.1993), quoting State v. Scott, 593 So.2d 704, 710 (La.App. 4th Cir.1991). Because the trial court has broad discretion in imposing a sentence within statutory limits, a reviewing court can only set it aside if it is clearly excessive, rather than because another sentence might have been appropriate. State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
In reviewing a claim that a sentence is excessive, the appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines and that the sentence is warranted under the facts established by the record. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). Because a sentence could be excessive even though it falls within the statutory limit, the trial court's statement regarding the factors considered under Article 894.1 of the Code of Criminal Procedure are an important aid in reviewing an alleged excessive sentence. State v. Cann, 471 So.2d 701, 703 (La.1985).
In sentencing Mr. Trepagnier in this case, the trial judge noted that the incident giving rise to the instant charges occurred within six months after he had pled guilty to another felony charge and while he was on probation for that conviction. The court also considered that Mr. Trepagnier had been involved in a similar shooting incident only two weeks before this one, for which he was being sentenced that same day on three counts of attempted second degree murder. The judge further noted that although Mr. Trepagnier had actually fired shots and injured Mr. Thompson during the attempted robbery, "the jury comes back with a reduced verdict, from attempted second degree murder to that of aggravated battery." Thus, the court described Mr. Trepagnier's offenses as "a serious course of conduct." This recitation at sentencing, considered with the facts established in the record, provides this court with an adequate basis for review as required by Article 894.1 C of the Code of Criminal Procedure.
Nor do we find either of the challenged sentences to be excessive or grossly disproportionate to the seriousness of the crimes under the circumstances established in the record.
The sentencing range for a second felony offender convicted of attempted armed robbery is twenty-four and one-half years to ninety-nine years at hard labor, without benefit of parole, probation or suspension of sentence. La. R.S. §§ 14:27, 14:64; § 15:529.1 Mr. Trepagnier was sentenced to forty-nine years at hard labor, without benefits, after firing a shotgun towards three people and wounding one in his attempted robbery. He committed this crime, as well as another two weeks earlier, while on probation. Under these facts, we cannot say that the sentence imposed is constitutionally excessive or constitutes an abuse of the trial court's discretion. See State v. Marshall, 94-0461, p. 26 (La.9/5/95), 660 So.2d 819, 829; State v. Augustine, 482 So.2d 150, 154 (La.App. 4th Cir.1986); State v. Forde, 482 So.2d 143, 145 (La.App. 4th Cir.1986); and cases cited therein.
Mr. Trepagnier received the maximum sentence, ten years at hard labor, for his conviction of a lesser offense than that charged on count two. This court has held *190 that a ten-year sentence for shootings that result in an aggravated battery conviction is not excessive. State v. Smith, 94-2588, p. 8 (La.App. 4th Cir.3/27/96), 672 So.2d 1034, 1039; State v. Hawkins, 95-0028, pp. 4-5 (La.App. 4th Cir. 3/29/95), 653 So.2d 715, 717-18. In the present case, it was established that Mr. Trepagnier shot Mr. Thompson without provocation and in an attempt to commit a robbery. In addition, the unarmed victim was trying to escape at the time the shotgun was fired. In light of these circumstances, the sentence imposed is not constitutionally excessive for the conviction of aggravated battery.
This assignment of error is without merit.

CONCLUSION
For the reasons assigned, Mr. Trepagnier's convictions and sentences are affirmed. However, it is ordered that the trial court prepare an amended commitment form specifying that only the sentence on count one, attempted armed robbery, must be served without the benefit of probation, parole, or suspension of sentence.
AFFIRMED.
NOTES
[1] Simon was later overruled on other grounds. State v. Celestine, 95-1393, p. 5 (La.1/26/96), 671 So.2d 896, 898.